205 N.J. Super. 548 (1985)
501 A.2d 577
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
LEON BOWENS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 21, 1985.
Decided December 4, 1985.
*550 Before Judges FURMAN, PETRELLA and COHEN.
Robert Seelenfreund, Assistant Deputy Public Defender, argued the cause for appellant (Thomas S. Smith, Acting Public Defender, attorney; Peter B. Meadow, Assistant Deputy Public Defender, of counsel and on the brief).
Donna Chin, Deputy Attorney General, argued the cause for respondent (Irwin I. Kimmelman, Attorney General, attorney; Helena Gorochow, Deputy Attorney General, of counsel and on the brief).
PER CURIAM.
Defendant appeals from his conviction of murder, N.J.S.A. 2C:11-3a(1) or (2), following a seven-day jury trial. We reverse and remand because of error in the trial court's refusal to charge reckless manslaughter and in its failure to charge aggravated manslaughter sua sponte.
At issue is whether a killing by excessive force in self-defense may be aggravated or reckless manslaughter, not murder, under the Code of Criminal Justice. N.J.S.A. 2C:11-3 defines murder, insofar as pertinent, as purposefully or knowingly causing death or serious bodily injury resulting in death. N.J.S.A. 2C:11-4 defines manslaughter:
a. Criminal homicide constitutes aggravated manslaughter when the actor recklessly causes death under circumstances manifesting extreme indifference to human life.
b. Criminal homicide constitutes manslaughter when:
(1) It is committed recklessly; or
(2) A homicide which would otherwise be murder under section 2C:11-3 is committed in the heat of passion resulting from a reasonable provocation.
The general definition of "recklessly" is set out in N.J.S.A. 2C:2-2:
A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would *551 observe in the actor's situation. "Recklessness," "with recklessness" or equivalent terms have the same meaning.
A version of the evidence which would have supported a jury verdict of aggravated or reckless manslaughter is as follows, drawn chiefly from defendant's own testimony. For over a year defendant had repeated arguments with John Booker over a woman. Booker threatened him about 50 times. Booker was "always drunk." Several times Booker accompanied his threats by pulling out a knife about seven to eight inches long, like a dagger, and showing it to defendant. Booker was bigger than defendant. Defendant knew of Booker's reputation for violence and was fearful of Booker's violence when drunk.
On a late afternoon in July, Booker had been at an outdoor barbecue and had been drinking. Defendant was on an errand across the street. Booker started across towards defendant, saying that he wanted to see him. Booker's hands were in his pockets. He started cursing defendant. He appeared to be drunk. Defendant was apprehensive that Booker had a knife and would make a sneak attack on him. Defendant asked Booker to leave him alone. Defendant showed his own knife to Booker, then put it back in his belt. Defendant walked away. Booker followed him. When Booker was about two feet away from him defendant stabbed Booker slightly in the chest "because I knew he was going to stab me." Defendant's intention was to stop Booker, not to hurt him badly. After the blow Booker had a "funny look on his face like he was smiling." It occurred to defendant that Booker had not felt the knife prick. Booker spun around, one hand still in a pocket. Without stepping forward, defendant stabbed Booker twice in the back, "a little harder" than he had stabbed him in the chest. A wound in Booker's back was fatal.
The trial judge charged the jury that it might return verdicts of guilty of murder, of manslaughter committed in the heat of passion resulting from reasonable provocation, or of not guilty. He charged self-defense, including the duty to retreat. He instructed the jury that if it found that defendant had used *552 excessive force, that is, deadly force when not reasonably necessary, the killing of Booker would not have been justified in self-defense. Although not stated to the jury in so many words, its alternatives were to convict of murder or acquit, unless it found a factual underpinning for a verdict of guilty of manslaughter in the heat of passion upon reasonable provocation.
Defense counsel requested and was denied further jury charges on reckless manslaughter and imperfect self-defense. By imperfect self-defense, see State v. Powell, 84 N.J. 305 (1980), defense counsel meant use of deadly force in an honest but unreasonable belief that defendant was in such danger as to require its use to protect himself. The significance of imperfect self-defense is that, if it applies, it exonerates a defendant from a purposeful or knowing murder conviction but subjects him to a reckless manslaughter conviction and, arguably, to an aggravated manslaughter conviction as that crime is defined in N.J.S.A. 2C:11-3a.
In our view imperfect self-defense may constitute manslaughter under the Code of Criminal Justice. We recognize that imperfect self-defense is not specifically provided for in the Code. We recognize also the deletion by amendment in L. 1981, c. 290, of N.J.S.A. 2C:3-9b, which provided that a reckless belief in the necessity for excessive force would not prevent a verdict of guilty of an offense for which recklessness was sufficient to inculpate. The intent of that deletion by amendment is not manifest.
The substantive criminal law of this state survived the effective date of the Code unless inconsistent with it, N.J.S.A. 2C:1-1e; State v. Dalglish, 86 N.J. 503, 511 (1981).
Chief Justice Wilentz wrote in State v. Powell, supra, on appeal from a conviction of a pre-Code homicide:
Thus we hold that, in addition to the conventional provocation/passion manslaughter instruction, Powell will be entitled upon retrial to a manslaughter instruction based on a homicide committed in imperfect self-defense. While *553 such category of manslaughter may represent some extension of prior case law, we hold that that was the law in effect at the time of the offense. [84 N.J. at 313]
On the evidence on this appeal, the jury may have determined factually that defendant acted initially in self-defense; that he overreacted to an accumulation of threats and to Booker's menacing approach, based upon his awareness that Booker carried a knife and of Booker's propensity for violence; that, after the first slight knife prick, in the face of what he perceived as a continuing menace he stabbed recklessly in disregard of the substantial risk of death or under circumstances manifesting extreme indifference to the victim's life, but without purposely or knowingly causing death or serious bodily injury resulting in death. Upon such a reconstruction of events, defendant would be guilty of reckless or aggravated manslaughter.
If there is a clear indication in the proofs that a criminal defendant charged with murder may have committed a lesser degree of criminal homicide, it is error not to submit that issue to the jury upon a request to charge it. State v. Choice, 98 N.J. 295 (1985); State v. Powell, 84 N.J. 305 (1980); State v. Sinclair, 49 N.J. 525 (1967); State v. Mathis, 47 N.J. 455 (1966). As stated in Sinclair, 49 N.J. at 543:
To force the jury to choose on the evidence in the case between first degree murder and acquittal raises the possibility that the defendants might have been convicted of first degree murder though their guilt was of a lesser degree.
We attach no significance to defense counsel's failure in so many words to request a jury charge on aggravated manslaughter, cf. State v. Choice at 98 N.J. 299, because the elements of aggravated and reckless manslaughter are identical, except for the difference in the degree of risk of death, see State v. Curtis, 195 N.J. Super. 354 (App.Div. 1984).
Because of our reversal and remand on other grounds, we need not and do not pass upon defendant's argument of denial of a fair trial as the result of a "misleading response" by a juror on voir dire, depriving defendant of a peremptory challenge. *554 Defendant's other argument of error in the limitation of cross-examination of a State's witness is clearly without merit, Evid.R. 47.
We reverse and remand for further proceedings not inconsistent herewith. We do not retain jurisdiction.
PETRELLA, J.A.D., dissenting.
I differ with the reasoning of the majority and respectfully dissent. Here, a jury convicted defendant after having been given a full and adequate charge on murder, heat of passion manslaughter and self-defense. There was no request for a charge of aggravated manslaughter. As I view the facts, they do not clearly indicate that any charge was appropriate for reckless manslaughter.
First, I must comment on what the majority opinion refers to as "a version" of the facts (based essentially on selective portions of defendant's contradictory testimony), which would in its view support charges regarding reckless manslaughter and "imperfect self-defense." That version[1] goes beyond giving reasonable inferences in favor of defendant and disregards undisputed physical evidence as well as other testimony by defendant.
In my view, reasonable men could not conclude that stabbing somebody in the chest, however slight, is meant merely to frighten that person. It is one thing to display a knife to frighten someone. It is quite another to stab the person. This is made even more apparent considering the actual stab wounds. No reasonable version of the actual facts can support defendant's claim that he only intended to frighten the victim. Defendant acknowledged that he intended to jab defendant with the knife "like a dart." The medical report indicated that the stab wound in the victim's chest, the first wound, was to a *555 depth of six inches and sliced the victim's liver. Moreover, this defendant also then proceeded to stab the victim in the back twice (the testimony of other witnesses was that the victim was trying to flee). One of those knife wounds had its point of entrance in the victim's left shoulder and was stopped by a bony substance. The second wound in the center of the victim's back severed his aorta and was considered the cause of death. With the first stab wound going to a depth of six inches, no reasonable jury could conclude that it was a "slight prick" or intended only to frighten the victim as opposed to inflicting serious physical harm.
It appears that the majority opinion forces the trial judge to do exactly what State v. Choice, 98 N.J. 295 (1985), said was not necessary. Commenting on the meaning of State v. Powell, 84 N.J. 305 (1980), the Supreme Court said:
Our review of the record in this matter shows that whatever else in this case may be murky, it is clear that the facts here do not `clearly indicate the possibility that the crime was manslaughter based upon ... provocation/passion. .. .' Powell, 84 N.J. at 318. The trial court does not, by virtue of Powell, have the obligation on its own meticulously to sift through the entire record in every murder trial to see if some combination of facts and inferences might rationally sustain a manslaughter charge. It is only when the facts `clearly indicate' the appropriateness of that charge that the duty of the trial court arises. That is what was referred to in Powell, and those were the facts as they existed in Powell. Such clarity being absent here and there being no request so to charge, we reverse the judgment of the Appellate Division and reinstate the conviction and sentence of the trial court. [98 N.J. at 299]
More specifically, in my view the trial judge was not required to instruct the jury on reckless manslaughter and aggravated manslaughter. No requests had been made for an instruction on aggravated manslaughter, and defendant's attorney had only requested jury instructions on reckless manslaughter and imperfect self-defense. Of course, merely because a request has not been made, does not mean that there may not be a requirement for the judge to so charge. See State v. Choice, supra, 98 N.J. at 298-299, and State v. Powell, supra, 84 N.J. at 318-319. It is only where the facts "clearly indicate" the appropriateness of that charge that the trial judge has a duty to *556 charge notwithstanding the absence of a request to charge. State v. Choice, supra, 98 N.J. at 299. See also N.J.S.A. 2C:1-8(e) which states that the jury shall not be charged with respect to an included offense, unless there is a rational basis for a verdict convicting defendant of the included offense.
There was no rational basis in this case to support a charge to the jury or a verdict on either reckless or aggravated manslaughter, notwithstanding defendant's argument that his own testimony, which the majority almost exclusively refers to in its opinion, would support a jury finding that his actions were not purposeful or knowing, but were instead reckless. The facts of this case would not support a conclusion that defendant only acted recklessly when he grabbed Booker and stabbed him in the back twice after having stabbed him once in the chest. The jury heard all of the testimony needed to establish heat of provocation manslaughter, intent-to-kill murder or self-defense. It found beyond a reasonable doubt that defendant acted intentionally. Defendant even concedes in his brief that "there is more evidence on the record to infer a finding that defendant's actions were either purposeful or knowing" rather than reckless.
The actual evidence of what occurred, including the description of the wounds and the injuries, does not provide the necessary rational basis to require a reckless manslaughter charge. Although the attorney's trial strategy in not requesting an aggravated manslaughter charge is not the determinative factor on whether that charge should have been given, it flavors what actually happened at the trial and the reasons the case was tried as it was. State v. Harper, 128 N.J. Super. 270 (App.Div. 1974), certif. den. 65 N.J. 574 (1974), 68 N.J. 284 (1975). Second guessing, based on a cold transcript rarely provides the same opportunity for evaluation as what occurred in live testimony and the presentation of exhibits.
Likewise, I would conclude that the trial judge properly rejected defendant's request to charge "imperfect self-defense." *557 The phrase is actually a misnomer, and perhaps should be restated as more nearly unreasonable self-defense. I would hold that a charge with respect to so-called "imperfect self-defense" is no longer available under the New Jersey Penal Code. I agree with the reasoning in State v. Murphy, 185 N.J. Super. 72, 75 (Law.Div. 1982), where it was noted that the deletion of N.J.S.A. 2C:3-9(b) from the Penal Code abolished imperfect self-defense, if it was ever available under the Code. See State v. Powell, supra, 84 N.J. at 313 n. 9 N.J.S.A. 2C:3-9(b), now repealed, had provided:
When the actor believes that the use of force upon or toward the person of another is necessary for any of the purposes for which such belief would establish a justification under section 2C:3-3 to 2C:3-8 [use of justifiable force] but the actor is reckless or negligent in having such belief or in acquiring or failing to acquire any knowledge or belief which is material to the justifiability of his use of force, the justification afforded by those sections shall not prevent the actor being found guilty of an offense for which recklessness or negligence, as the case may be, suffices to establish culpability.
Thus, after the amendment of the statute, mere belief (contrasted with the even more liberal unreasonable belief) is not sufficient to reduce homicide to reckless manslaughter. State v. Murphy, supra, 185 N.J. Super. at 75; see N.J.S.A. 2C:2-5. A mere unreasonable belief will not constitute a justification of self-defense. State v. Kelly, 97 N.J. 178, 199 (1984).[2] Any such belief by defendant here would certainly have been unreasonable at best, and even if that defense were available, there is not sufficient evidence to rationally sustain a charge of imperfect self-defense.
I find no merit in any of the other issues raised on this appeal. Accordingly, I would affirm the conviction, as well as the sentence.
NOTES
[1] There was, of course, far different testimony from other witnesses in the case.
[2] The history of the adoption of the Penal Code supports the conclusion that there had to be a reasonable basis for self-defense. See N.J.S.A. 2C:3-4, as adopted. See generally, DeCicco, proposed New Jersey Penal Code, Vol. 1, No. 3 Crim.J.Q. (Summer 1973); and Report on the Proposed New Jersey Penal Code, Essex County Prosecutor's Office, prepared by David S. Baime.