STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. LEON
BOWENS, DEFENDANT-RESPONDENT.

STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
ANTHONY TYRONE RIVERS,
DEFENDANT-APPELLANT.

Argued February 3, 1987—Decided October 29, 1987.

624

*Arthur S. Safir,* Deputy Attorney General, argued the cause for appellant State of New Jersey (*W. Cary Edwards,* Attorney General of New Jersey, attorney).

*William Welaj,* Designated Counsel, argued the cause for appellant Anthony Tyrone Rivers (*Alfred A. Slocum,* Public Defender, attorney; *Thomas C. Miller,* Designated Counsel, of counsel and on the brief).

*Jane F. Tong,* Deputy Attorney General, argued the cause for respondent State of New Jersey (*W. Cary Edwards,* Attorney General of New Jersey, attorney).

*Robert Seelenfreund* argued the cause for respondent Leon Bowens (*Alfred A. Slocum,* Public Defender, attorney; *Peter*

B. *Meadow*, Assistant Deputy Public Defender, of counsel and on the brief).

The opinion of the Court was delivered by

O'HERN, J.

■ In these appeals both defendants contend that they were incorrectly denied jury charges on imperfect self-defense. We hold that the Code of Criminal Justice, *N.J.S.A.* 2C:1-1 to 98-4, does not provide an independent category of justification, excuse, or mitigation under the concept of imperfect self-defense. We find, however, that evidence that will sustain the defense at common-law is frequently relevant to the presence or absence of the essential elements of Code offenses. Accordingly, we affirm the judgment of the Appellate Division in *State v. Bowens*, 205 *N.J.Super.* 548 which reversed a conviction of murder for failure to permit the jury to assess, as bearing on the question of whether the homicide charged was reckless rather than purposeful or knowing, defendant's testimony that he intended not to kill the victim but only to defend himself. In *State v. Rivers*, we affirm defendant's conviction of aggravated manslaughter under circumstances in which he contended that he killed the victim to avert a deadly assault in a homosexual encounter. He received jury charges on the available verdicts for which there was a reasonable basis in the evidence.

I

Like the concept of diminished capacity involved in *State v. Breakiron*, 108 *N.J.* 591 (1987), also decided today, the concept of an imperfect self-defense requires us to focus upon the definitions of criminal culpability set forth in our Code of Criminal Justice as gradations of crime, and to examine the justifications or excuses for otherwise criminal conduct set forth in the Code. Like the concept of diminished or partial responsibility discussed in *Breakiron*, recognition of an "imperfect self-defense" would require us to create, as a matter of

decisional law, new substantive elements not embraced by the Code. Further, it would require us to hold that a self-defense claim that fails to meet the Code's requirements of objective reasonableness, although not exonerating the defendant of criminal responsibility, would downgrade the charge of murder to manslaughter. As in *Breakiron,* we decline to create a new substantive category of culpability absent clear legislative intent to do so.

### A

The doctrine of imperfect self-defense has its roots in common-law attempts to grade the degrees of murder and thus to separate capital murder from all others. Chief Judge Charles Moylan of the Maryland Court of Appeals traced its history:

> From the turbulent waters of the criminal law * * *, roiled by the dictates of *Mullaney v. Wilbur,* [421 *U.S.* 684, 95 *S.Ct.* 1881, 44 *L.Ed.*2d 508 (1975) ], * * * emerged an esoteric qualification to the doctrine of self-defense, known as the "imperfect right of self-defense." [*Cunningham v. State,* 58 *Md.App.* 249, 252, 473 *A.*2d 40, 41 (Ct.Spec.App.), *cert. denied,* 300 *Md.* 316, 477 *A.*2d 1195 (1984) (Moylan, J.) (quoting *Faulkner v. State,* 54 *Md.App.* 113, 114–15, 458 *A.*2d 81, 82 (Ct.Spec.App.1983), *aff'd,* 301 *Md.* 482, 483 *A.*2d 759 (1984).]

The characteristic effect of the doctrine is to negate the presence of malice that is predicate to a finding of first-degree or capital murder. *Faulkner v. State, supra,* 54 *Md.App.* at 113, 458 *A.*2d at 82 ("[t]he mitigating effect of imperfect self-defense is to negate malice"); *People v. Flannel,* 25 *Cal.*3d 668, 160 *Cal.Rptr.* 84, 87, 603 *P.*2d 1, 4 (1979) (*en banc* ) (as a mental state, malice cannot coexist with an unreasonable belief by defendant that defendant was defending against imminent bodily harm). This effect of the defense—negation of "malice"—is not immediately relevant to a Code state that defines murder in "the minimal senses" of acting knowingly or purposely. *State v. Breakiron, supra,* 108 *N.J.* at 617 (quoting American Law Institute, *Model Penal Code and Commentaries* (Official Revised Comments, Comment to § 4.02 at 220 (1985)). We shall consider its relevance to our Code definition of murder.

Generally, "in order for a killer to have a perfect self-defense to homicide, he or she must: (1) be free from fault in bringing on the conflict with his or her adversary; and (2) reasonably, though not necessarily correctly, believe (a) that his adversary will, unless forcibly prevented, immediately inflict upon him or her a fatal or serious bodily injury, and (b) that the deadly force must be used upon the adversary to prevent him or her from inflicting such an injury." W. LaFave and A. Scott, Jr., *Handbook on Criminal Law* 583 (1972). "If one who is not the aggressor kills his adversary with these two actual and reasonable beliefs in his mind, his homicide is justified, and he is guilty of no crime—not murder, not manslaughter, but no crime." *Ibid.* (footnote omitted). An aggressor faced even with the reasonable belief in the necessity to kill "cannot have the defense of self-defense, for that requires both freedom from fault in the inception of the difficulty and the entertainment of beliefs which are reasonable." *Ibid.*

In the context of this opinion we do not deal with the first aspect of a perfect self-defense, namely, the actor's freedom from fault in the inception of the conflict; this aspect is set forth in the Code, *N.J.S.A.* 2C:3–4(b)(2)(a). Instead, we focus on the second factor of self-defense: whether the actor's beliefs are reasonable. In this context, imperfect self-defense would mean no more than an honest subjective belief on the part of the killer that his or her actions were necessary for his or her safety, even though an objective appraisal by reasonable people would have revealed not only that the actions were unnecessary, but also that the belief was unreasonable. *State v. Powell*, 84 *N.J.* 305, 311–13 (1980).

In some jurisdictions, "one who uses force against another with an honest but unreasonable belief that he must use force to defend himself from an imminent attack by his adversary * * * is guilty of murder when he uses deadly force in such circumstances * * *." *Handbook on Criminal Law, supra,* at 397. Other courts and legislatures, however, find that one who acts with an honest but unreasonable belief is not guilty of

murder but is guilty of manslaughter. *Ibid.* We must choose between the two results.

## B

As noted in *State v. Grunow,* 102 *N.J.* 133 (1986), the drafters of our Code originally approached the broader concept of justification in terms of the subjective attitudes of the criminal actor. Thus, as introduced, the Code of Criminal Justice provided for self-defense as follows:

> *Use of Force Justifiable For Protection of the Person.* Subject to the provisions of this Section and of Section 2C:3–9, the use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion. [1 NJ Criminal Law Revision Commission, *Final Report* 26, § 2C:3–4(a) (1971).]

However, in the course of legislative modifications the County Prosecutors Association and the Attorney General objected to the subjective standard of self-defense adopted in the Senate Judiciary Committee. As a result, the self-defense provisions were altered to re-establish the objective standard of self-defense:

> *Use of force justifiable for protection of the person.* Subject to the provisions of this section and of section 2C:3–9, the use of force upon or toward another person is justifiable when the actor *reasonably* believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion. [*N.J.S.A.* 2C:3–4(a) (added by Senate Committee amendments) (emphasis supplied).]

At the time the self-defense provisions were modified, no change was made in *N.J.S.A.* 2C:3–9(b). That section provided that any actor who recklessly or negligently arrived at the belief necessary to the justifications afforded by sections 2C:3–3 to 3–8 could be found guilty of any offense "for which recklessness or negligence * * * suffices to establish culpability." *See State v. Grunow, supra,* 102 *N.J.* at 138–39 (as originally recommended, the Code was to contain two forms of manslaughter—reckless and negligent).

Thus at the time of the decision in *State v. Powell, supra,* when our Court held that imperfect self-defense was available

under pre-Code law to reduce second-degree murder to manslaughter, the Code was in flux. 84 *N.J.* at 313. Indicating that manslaughter "based on a homicide committed in imperfect self-defense * * * may represent some extension of prior case law," the Court held that such "was the law in effect at the time of [Powell's] offense." *Ibid.* The Court expressed "no opinion on the availability, under the new Code of Criminal Justice, of a claim of imperfect self-defense for the purpose of reducing murder to manslaughter." *Ibid.* n. 9.

Following the decision in *Powell,* however, the Legislature, through the Omnibus Amendments, deleted subsection (b) of *N.J.S.A.* 2C:3-9. *L.*1981, *c.* 290, § 6. The legislative statement annexed to the repealer stated:

> As originally drafted, justification defenses (i.e. self-defense) under the code were available to a defendant if his belief in the necessity of the use of force was honestly held. In conjunction with this provision, the code also provided in 2C:3-9b that if the defendant was reckless or negligent in forming that belief, he could be convicted of a crime for which recklessness or negligence was the required mental element. As enacted, however, the code requires not only that a defendant's belief be honestly held but also that his belief in the necessity to use force be reasonable. This requirement that a defendant's belief be both honest and reasonable *vis a vis a justification defense* obviates the necessity for the provision in 2C:3-9b that the reckless or negligent use of force can establish criminal liability. Therefore, the amendment in section 7 would delete this provision. [*Senate Judiciary Committee, Statement to Committee Substitute for S. 1537* at 2 (1981) (emphasis supplied).]

The question of the continued existence of imperfect self-defense under the Code appears to have been resolved by the repealer. There remains, however, an unsettling ambiguity about the legislative statement. While the statement clearly establishes the intent to shift from subjective to objective standards of *justification,* it does not so clearly address the Legislature's intent with respect to *mitigation.* When we speak of mitigation in this context, we mean a generalized mitigation that would reduce murder to manslaughter, not specific evidence that bears on the substantive elements of an offense. *See infra* at 632-33. We are left with this indefiniteness. The Legislature has not specifically stated that

an honest but unreasonable belief, although not a justification for an unlawful homicide, might nonetheless constitute a mitigation of unlawful homicide. We believe that it does not.

The common law's predilection to judge all conduct by that of the reasonable man or woman makes it extraordinarily difficult for the system to accommodate the concept of partial or putative justification or self-defense. Fletcher, "The Right and the Reasonable," 98 *Harv.L.Rev.* 949 (1985). That "[t]he reasonable is equated with the justifiable" represents a "way of thinking * * * deeply rooted in the American legal consciousness * * *." *Id.* at 973. The Model Penal Code was criticized for having fashioned standards of liability commensurate with the culpability of the belief. Note, "Justification: The Impact of the Model Penal Code on Statutory Reform," 75 *Colum.L. Rev.* 914, 919 (1975). Hence, most codes adopted the "reasonable belief" rule. *Id.* at 919. This emphasis on the all-or-nothing operation of justification has had the effect of "clouding the real issue: *whether* forfeiture of a defense based on belief should result in the *purposeful* liability that customarily attends the denial of other defenses." *Ibid* (emphasis added).

We recognize that in "so grave a matter as a capital offense, the Court ought to be certain that it does not read a statute to exceed the true legislative objective." *State v. Madden,* 61 *N.J.* 377, 389 (1972). However, we are satisfied that the correct reading of the legislative intent in this area requires the imposition of such liability. For although the Code states that all defenses existing at common law would be preserved unless the contrary plainly appeared, *N.J.S.A.* 2C:2-5, and that the provisions of the Code not inconsistent with prior law be deemed a continuation of such law, *N.J.S.A.* 2C:1-1(e), the Code is more emphatic in stating that only the Legislature may create a new category of substantive crime. *N.J.S.A.* 2C:1-5(a). Were we to create an unspecified form of manslaughter to accommodate this uncertainty in the Code, we would be doing just that. As we said in *State v. Ramseur,* 106 *N.J.* 123, 269 (1987),

[u]nlike our pre-Code law, the Code itself defines the *mens rea* requirements for all offenses. *See N.J.S.A.* 2C:2–2; 2 *Final Report of the New Jersey Criminal Law Revision Commission* 40 (1971). Before a defendant can be convicted of any offense, he must act with one of the states of mind set forth in *N.J.S.A.* 2C:2–2(b). There is, therefore, a state of mind for every offense save those that rest on strict liability.

## C

The uncertainty is tempered, however, by the realization that in many, if not most, circumstances, including those, as here, involving a combatant exchange, the proffered evidence may certainly bear directly on the question of whether the homicide was knowing or purposeful, and would be admissible to counter these essential elements of the offense of murder. We shall give examples (*see infra* at 633–34) of how this occurs but shall first discuss the legal principles that produce that effect. Our law has always recognized the difference between a defense based on the existence of a fact that negates an essential element of the crime as defined, and the narrower concept of an affirmative defense that excuses conduct that is otherwise unlawful. *See, e.g., State v. Bess,* 53 *N.J.* 10, 16–17 (1968) (drawing distinction under pre-Code law between objective justification of self-defense that might excuse second-degree murder and subjective intentions of self-defense that could negate premeditation and deliberation required for first-degree murder).

The Supreme Court has recently recognized this critical distinction between the use of evidence to justify conduct, that is, to make the conduct lawful, and the use of evidence to counter the State's main case. *Martin v. Ohio,* 480 *U.S.* ——, 107 *S.Ct.* 1098, 94 *L.Ed.*2d 267 (1987). By noting that the same evidence will often negate the State's case without preponderating, the Court was able to sustain Ohio's law, which imposed on the defendant the burden of proving self-defense, against the argument that the law impermissibly shifted to the defense the burden of disproving an essential element of the crime.

We are thus not moved by assertions that the elements of aggravated murder and self-defense overlap in the sense that evidence to prove the latter will often tend to negate the former. It may be that most encounters in which self-defense is claimed arise suddenly and involve no prior plan or specific purpose to take life. In those cases, evidence offered to support the defense may negate a purposeful killing by prior calculation and design, but Ohio does not shift to the defendant the burden of disproving any element of the state's case. When the prosecution has made out a prima facie case and survives a motion to acquit, the jury may nevertheless not convict if the evidence offered by the defendant raises any reasonable doubt about the existence of any fact necessary for the finding of guilt. Evidence creating a reasonable doubt could easily fall far short of proving self-defense by a preponderance of the evidence. [480 *U.S.* at ——, 107 *S.Ct.* at 1102, 94 *L.Ed.*2d at 274–75.]

Of course, Ohio's "prior calculation and design" differs from our "knowledge" and "purpose" to take life, but the conceptual predicate is basically the same.

In his supplemental brief, the Attorney General recognizes the distinctions to be made in the use of such defensive evidence, and concludes that the concept of imperfect self-defense "is multi-faceted and must be discussed as such before determining what, if any, place it has in Title 2C." An example given by the Attorney General of the multi-faceted nature of the defense includes the overreaction in self-defense to aggressive or threatening conduct, e.g., shooting to kill an unarmed attacker who has fallen to the ground. He noted that to the extent the victim's conduct constitutes "reasonable provocation" the offense may be mitigated to become the Legislature's special homicide offense, passion-provocation manslaughter. *N.J.S.A.* 2C:11–4(b)(2). Evidence of imperfect self-defense does not *justify* the conduct, it *mitigates* the offense. Another example given is the reckless use of mortal force in self-defense, as when one seeking to repel an attacker disregards a risk that pushing the aggressor down a cliff will result in death. That person may not have committed murder purposely or knowingly but may be guilty of one of the forms of manslaughter: either reckless homicide under *N.J.S.A.* 2C:11–4(b)(1) or reckless homicide manifesting extreme indifference to human life under *N.J.S.A.* 2C:11–4(a). The evidence bears on the essential elements of a Code offense.

It thus follows that in many cases the issues of the reasonableness of the defendant's conduct presented to the jury in defense of the substantive crimes charged will have relevance to the essential elements of the homicidal act: whether it was the actor's conscious object to inflict deadly force, whether death was almost certain to follow, or whether the act was done recklessly or with reasonable provocation.

We recognize the difficulty of determining the probable intent of the Legislature with respect to this issue. However, we note that other jurisdictions that have combined the Model Penal Code rubric of knowing or purposeful murder with objective principles of justification through self-defense have declined to interpret their codes to allow imperfect self-defense to establish a new and unspecified form of manslaughter. They have answered the question of the existence of imperfect self-defense bluntly: "This contention should be addressed to the Legislature. The only form of self-defense recognized in this state requires that the actor's belief that resort to self-defense is necessary be reasonable." *State v. Hatley*, 41 *Wash.App.* 789, 798, 706 *P*.2d 1083, 1089 (1985); *see also State v. Hughes*, 106 *Wash.*2d 176, 721 *P*.2d 902 (1986) (refusing to lessen criminal culpability where defendant acts in self-defense based upon honest but unreasonable belief); *Balentine v. Alaska*, 707 *P*.2d 922, 930 (Alaska Ct.App.1985) (rejecting contention that one who kills under actual but unreasonable belief that deadly force was necessary has *per se* acted with an insufficient degree of recklessness to be guilty of murder). As we have recognized on other occasions, reorganizing the structure of New Jersey's criminal law was the effort of nearly a decade. It imposed numerous difficulties, some of which are not yet fully resolved. For example, we are not absolutely certain about how the Legislature would want us to resolve the dilemma posed by a case such as *State v. Williams*, 29 *N.J.* 27 (1959), in which a police officer shoots to kill in the honest but unreasonable belief that the use of force is needed in self-defense. Under the Code, the police officer might be found guilty of murder. Such a case

would pose questions of interpretation that we need not resolve in cases such as these, in which the evidence of imperfect self-defense bears at least in part upon available verdicts. We commend that issue to the consideration of the Legislature because of the possible consequences to public safety officers. We believe that our resolution of the issues before us is in accord with the basic purposes of the Code.

## II

The facts of each case need not be set forth in detail here. We shall accept for purposes of the *Rivers* appeal the version of the facts in defendant's brief. The incident began as a "pick-up" in a gay bar. Prior to arriving at the bar, defendant consumed substantial amounts of alcohol as well as some cocaine and marijuana. While at the bar he drank more alcohol. The defendant and victim subsequently left the bar to go to a restaurant where defendant worked. They went to a backroom area and engaged in sex. After they re-entered the restaurant area, the two became involved in an argument over defendant's attention to others. The defendant was seated at a bar stool. The victim allegedly picked up a knife and threatened to use it on the defendant. When the victim moved away, the defendant reached behind a counter and picked up a kitchen knife. When the victim came back at him, defendant said that he thought the victim was about to attack. The defendant stabbed the victim in the stomach, causing his death.

At trial, the court refused to charge the jury on imperfect self-defense. It did charge the jury with respect to the possible effect of alcohol on his state of mind and on the reckless manslaughter offenses. The jury acquitted the defendant of murder but found him guilty of aggravated manslaughter, unlawful possession of a knife, and possession of a knife for an unlawful purpose. He was sentenced to a fifteen-year term with a five-year parole disqualifier for the aggravated manslaughter and to a concurrent four-year term on the other two

offenses, which the court merged with each other. We granted direct certification to review his conviction. 107 *N.J.* 67 (1986).

The *Bowens* incident is detailed in the reported opinion below. The murder was preceded by a dispute between the defendant and the victim, John Booker. For over a year, Booker had threatened defendant on many occasions, often brandishing a knife. Defendant knew that Booker had a reputation for violence, particularly when Booker was drunk. On the day of the killing, Booker, apparently drunk, approached defendant in a manner that caused defendant to fear that Booker would attack him with the knife. The defendant showed Booker his knife and the victim retreated, but then proceeded to follow him. When Booker was about two feet away, defendant, believing he was going to be stabbed by Booker, and intending to stop Booker, stabbed him. At trial, the court denied the defendant's request for a jury charge on imperfect self-defense and instructed the jury on murder, manslaughter committed in the heat of passion, and justification based on self-defense. The jury found defendant guilty of first-degree murder, and the trial court sentenced him to life imprisonment with the required thirty-year parole disqualifier. The Appellate Division reversed, finding prejudicial error in the trial court's failure to charge the jury on aggravated and reckless manslaughter. 205 *N.J.Super.* 548 (1985). One judge dissented, finding no rational basis in the evidence to support these charges. *Id.* at 556 (Petrella, J.A.D., dissenting). The State appealed as of right under *Rule* 2:2-1(a).

 ▪ . Applying the principles outlined above to the facts in *Rivers* first, we find that the trial court was correct in refusing the instruction on imperfect self-defense. As noted earlier, in addition to its effect on self-defense, defendant was entitled to have the jury consider the evidence of his honest, if not reasonable, belief in the necessity to use force if in fact the evidence bore upon the question whether the State had proven that he acted purposely or knowingly. Did he act "purposely," as the

Code defines it, in the sense of having the conscious object or design to kill, or did he act "knowingly," as the Code defines that term, in the sense of being practically certain that his conduct would cause death? The trial court gave the jury the opportunity to assess the evidence in this way when it instructed the jury on the alternate verdicts of murder, reckless manslaughter, and aggravated manslaughter, the theory the jury ultimately decided upon. In this sense, the evidence served as a "failure-of-proof defense" in addition to its service as an exculpatory defense, a defense that the jury rejected. *See generally State v. Breakiron*, 108 *N.J.* 591, 603–04 (1987) (discussing various categories of defense, justification, excuse, failure of proof or public policy, and the way in which evidence may bear out each). We therefore approve the trial court's decision not to charge that imperfect self-defense would serve to reduce murder to an unspecified degree of manslaughter. We find no error in that ruling.

Other issues raised by the defendant were that 1) the trial court erred in granting the State's request for a continuance to produce a witness; 2) the verdict was against the weight of the evidence; 3) the trial court erred in failing to merge the conviction for possession of a weapon with an unlawful purpose into the aggravated manslaughter conviction; and 4) the sentence imposed was manifestly excessive.

The first two issues are essentially factual disputes leading to the exercise of judicial discretion. The continuance involved a one-half hour delay to allow an expert witness for the State to appear the next morning. It was well within the court's discretion.

Defendant's second claim is that the verdict of aggravated manslaughter was against the weight of the evidence. Defendant did not challenge the verdict below via a motion for new trial as required by *Rule* 2:10–1. Even if his claim were not barred procedurally, we would find this claim without merit. Defendant contends that he was too intoxicated to form the

belief that a single stab wound to the abdomen had a high probability of causing death. He argues that at most the evidence supported a reckless manslaughter conviction only, that is, the evidence showed that defendant could have believed the victim's death possible but not highly probable as a result of his actions. For aggravated manslaughter, in order to demonstrate the defendant's extreme indifference to human life, there must have been a probability, rather than a possibility, that death would have resulted from the defendant's actions. *State v. Curtis*, 195 *N.J.Super.* 354 (App.Div.), *certif. denied*, 99 *N.J.* 212 (1984). In this case, the extent of the injuries and the force with which they were inflicted suggest that level of indifference and provide ample basis for a conviction on these grounds.

■■  Defendant's third contention is that his conviction for possession of a weapon for an unlawful purpose should have been merged with his conviction of aggravated manslaughter because both offenses arose out of the same criminal transaction and because there is no evidence that he possessed the knife at any time other than at the time of the stabbing. A defendant may not be punished twice for the same offense. *State v. Miller*, 108 *N.J.* 112 (1987); *State v. Best*, 70 *N.J.* 56 (1976). *N.J.S.A.* 2C:1-8(a) provides:

> When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if:
>
> 1) One offense is included in the other, as defined in subsection d * * *.

Our Court has adopted a flexible approach to determine multiple offenses. *State v. Truglia*, 97 *N.J.* 513 (1984); *State v. Davis*, 68 *N.J.* 69 (1975). This review

> contemplates a multi-faceted analysis which would consider the nature of the offenses, the time and place of each offense, whether the evidence submitted as to one count of an indictment is necessary and/or sufficient to sustain a conviction under another count, whether one offense is an integral part of the larger scheme, the intent of the accused and the consequences of the criminal standards transgressed. [*State v. Best, supra,* 70 *N.J.* at 63.]

This factual complex calls for a close application of the principles of law to the facts. The trial court determined not to merge the offenses because each may be established by proof of a different fact which the other does not require. In order to demonstrate possession for an unlawful purpose, the State must prove that defendant possessed "any weapon, except a firearm, with purpose to use it unlawfully against the person or property of another * * *." N.J.S.A. 2C:39-4(d). A defendant is guilty of aggravated manslaughter, however, when "an actor recklessly causes death under circumstances manifesting extreme indifference to human life." N.J.S.A. 2C:11-4(a). We find no mistake of judgment resulting in double punishment. Cf. State v. DeLuca, 108 N.J. 98, 108 (1987) (if same evidence is actually employed to establish both offenses, prosecution of second offense is barred). We also note that the four-year term for the weapons offense was made concurrent with the aggravated manslaughter sentence.

▪ Defendant's fourth and final contention is that the trial court abused its discretion in imposing a parole ineligibility period pursuant to N.J.S.A. 2C:43-6b, because in fact the aggravating factors do not substantially outweigh the mitigating factors. N.J.S.A. 2C:43-6b, which defines the authority of the court to impose a period of parole ineligibility "[a]s part of a sentence for any crime," provides that the court be "clearly convinced that the aggravating factors substantially outweigh the mitig ing factors." See State v. Dunbar, 108 N.J. 80, 92 (1987). He e, the trial court imposed the presumptive fifteen-year sentence for a first-degree offense, N.J.S.A. 2C:44-1f, and added a five-year period of parole ineligibility. Although we have recently noted that a sentencing court should explain the reasons that harmonize a presumed ordinary term with a period of parole ineligibility, State v. Kruse, 105 N.J. 354, 363 (1987), we are satisfied that the court's sentencing discretion was correctly exercised here. The trial court was clearly convinced that the aggravating factors it found—the brutal, senseless nature of the stabbing, the defendant's prior record, and the

need to deter others—substantially outweighed any mitigating factors.

We therefore affirm the sentence and judgment as imposed.

■ In *Bowens*, the trial court correctly denied the imperfect self-defense charge but failed to permit the jury to consider the available verdicts implicated by defendant's evidence that he did not have the prerequisite for a murder conviction: the conscious object or near certainty that his attempt to defend himself would cause the victim's death. The Appellate Division correctly concluded that sufficient evidence existed in the record to have the jury consider whether the defendant overreacted to the perceived menace, stabbing the victim without purposely or knowingly causing death or serious bodily harm resulting in death, but with reckless disregard of the substantial risk of death or under circumstances manifesting extreme indifference to human life. 205 *N.J.Super.* at 553. The Appellate Division majority found it unnecessary to predicate its decision on the imperfect self-defense issue since, in any event, reversal was required based on the plain "error in the trial court's refusal to charge reckless manslaughter and in its failure to charge aggravated manslaughter *sua sponte*." *Id.* at 550. On this aspect of the case, we agree with the majority of the Appellate Division that the evidence presented an at least "rational basis for convicting defendant of [reckless or aggravated manslaughter]." *State v. Crisantos (Arriagas)*, 102 *N.J.* 265, 278 (1986). "In effect, the court unintentionally prevented defendant's conviction on the lesser included offenses of aggravated manslaughter or manslaughter, and forced the jury to choose between a murder conviction and an acquittal." *State v. Warren*, 104 *N.J.* 571, 578 (1986). Such errors are " 'poor candidates for rehabilitation under the harmless error philosophy.' " *State v. Crisantos (Arriagas)*, *supra*, 102 *N.J.* at 273 (citations omitted). We therefore affirm the Appellate Division's reversal of defendant's conviction.

### III

#### Summary and Conclusion

The statutory definitions of self-defense and manslaughter in a code like New Jersey's "provide no room for the theory advocated by the defendant[s] that an honest (or good faith) but unreasonable, belief that self-defense is necessary merits leniency." *State v. Hughes, supra,* 106 *Wash.*2d at 190, 721 *P.*2d at 910. Such codes do, however, permit consideration of a defendant's state of mind. If a defendant subjectively thinks that self-defense is necessary but does not intend fatal injury, in either the sense of knowledge or purpose, such evidence is relevant to the State's case on that issue. If such a defendant is aware that his or her acts create a risk of serious harm but unreasonably disregards that risk, then, if the essential elements of the crime are present, the defendant can be found guilty of manslaughter as defined by *N.J.S.A.* 2C:11–4a or b, instead of murder. *See State v. Hughes, supra,* 106 *Wash.*2d at 190–91, 721 *P.*2d at 910, applying these principles in a similar statutory setting. In some circumstances the evidence may bear upon the question of whether the defendant who committed a homicide in the heat of passion was reasonably provoked.

For the reasons stated, both judgments are affirmed.

*For affirmance*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.