SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**State v. Troy N. Tate** **(A-99-11) (069314)**

**Argued March 12, 2013 -- Decided November 12, 2013**

**RODRÍGUEZ, P.J.A.D. (temporarily assigned), writing for a unanimous Court.**

The issue in this appeal is whether a conviction for possession of a weapon for an unlawful purpose merges with a conviction for aggravated manslaughter and, if merger is required, under what circumstances.

Defendant, Troy M. Tate, was convicted by a jury of the first-degree aggravated manslaughter of Sheri Farren and related offenses. Defendant, Sheri Farren, Farren's boyfriend Paul Freas, Frank Mulholland, and Kevin Green were homeless acquaintances. Farren, Freas, and Mulholland would often drink and panhandle for money together on the Atlantic City boardwalk. Mulholland testified that, on the night of March 24, 2007, he met Farren and Freas on the boardwalk and they went to a small room under Boardwalk Hall, where they found Green asleep. Mulholland had been drinking all day and, after arriving at the room, the group drank a substantial quantity of vodka and beer. At some point that night, Mulholland and Green fell asleep and Freas left the room. Mulholland awoke and saw defendant standing over Farren, yelling at her, and swinging a club-like object. Farren asked Mulholland to find Freas. Mulholland recalled that Farren said something before he left to find Freas about some damaged playing cards. Mulholland spent the rest of the night looking for Freas, and only learned of Farren's death from a subsequent conversation with a police officer.

Green testified that he awoke that evening and saw defendant swinging a caulking gun with two hands, striking Farren on her back, legs, and head, and yelling at her about the torn playing card. After speaking with Green and Mulholland, the police identified defendant as a suspect. When the police arrested and searched defendant, they discovered a large deck of novelty playing cards that contained a torn ace of clubs. The weapon used in the homicide was never recovered. The medical examiner testified that Farren died on the morning of March 25, 2007, from "massive bleeding into the abdominal cavity due to blunt force injury" to her torso and lacerations to the spleen.

Following a jury trial, defendant was convicted of first-degree aggravated manslaughter, second-degree aggravated assault, third-degree aggravated assault, and third-degree possession of a weapon for an unlawful purpose. The judge did not merge any of the convictions. Defendant appealed. The Appellate Division affirmed the convictions but merged the convictions for second and third-degree aggravated assault into the first-degree aggravated manslaughter conviction. However, the panel rejected defendant's argument that the conviction for possession of a weapon for an unlawful purpose should be merged with the aggravated manslaughter conviction. Relying on State v. Bowens, 108 N.J. 622, 639 (1987), the panel explained that "each offense requires proof of a fact not required by the other."

The Supreme Court granted defendant's petition for certification. 210 N.J. 119 (2012) .

**HELD:** A conviction for possession of a weapon for an unlawful purpose must merge with a conviction for aggravated manslaughter when the evidence does not support the existence of another unlawful purpose for possession of the weapon.

1. The doctrine of merger is based on the concept that "a defendant who has committed one offense ' "cannot be punished as if for two." ' " State v. Hill, 182 N.J. 532, 542 (2005) (quoting State v. Brown, 138 N.J. 481, 561 (1994)). N.J.S.A. 2C:1-8a sets forth the parameters for merging offenses. However, " '[t]he standard for merger of offenses set forth by N.J.S.A. 2C:1-8, providing that offenses are different when each requires proof of facts not required to establish the other, has been characterized as "mechanical." ' " Id. (quoting State v. Diaz, 144 N.J. 628 (1996)). In Diaz, this Court found that "[w]hen the only unlawful purpose in possessing the gun is to use it to

1

commit the substantive offense, merger is required." 144 N.J. at 636. Thus, if a "jury is explicitly instructed that the unlawful purpose was to use the gun against the victim of the substantive offense, unless that unlawful purpose extended over a substantial period, merger is required notwithstanding that the evidence was sufficient to support a separate unlawful purpose." Id. at 641. Importantly, the Court explained that merger is not required when the weapon possession is for a broader purpose. When a jury's verdict is ambiguous as to whether defendant had a broader purpose in possessing the firearm than committing the substantive offense, the Court adopted a four-prong test to determine if merger is required. Id. at 639. To give proper guidance, a "jury instruction 'must include an identification of such unlawful purposes as may be suggested by the evidence.' " Id. at 640. In this case, because "the only unlawful purpose submitted to the jury was possession of the gun to use it in the killing," merger was required. Id. at 642. (pp. 7-14)

2. The approach to determine merger of offenses used in Diaz is applicable here. The evidence tends to prove that defendant possessed the weapon unlawfully only to commit the substantive offense. No broader unlawful purpose was supported directly or circumstantially by the evidence. Both the possession of the weapon for an unlawful purpose and the aggravated manslaughter resulted from a single course of conduct. Additionally, both charges require proof of the same fact: that defendant beat Farren with the caulking gun. The cases not requiring merger have had clear statutory differences illustrating legislative intent to fractionalize a course of conduct. The Court has determined, however, that the better course is to follow Diaz in deciding this and future merger disputes. This case contains no evidence to support a separate unlawful purpose, and, significantly, the jury was specifically instructed that defendant's unlawful purpose was "to assault Sheri Farren." Thus, under the Diaz rationale, merger is required because the evidence against defendant was that he possessed a weapon for the purpose of beating Farren with it – the substantive offense. (pp. 14-18)

The judgment of the Appellate Division is **REVERSED**, and the matter is **REMANDED** to the Law Division for correction of the judgment of conviction to reflect that the conviction for possession of a weapon for an unlawful purpose merges into the aggravated manslaughter conviction.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, and PATTERSON; and JUDGE CUFF (temporarily assigned) join in JUDGE RODRÍGUEZ's opinion.**

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

       v.

TROY N. TATE,

    Defendant-Appellant.


        Argued March 12, 2013 – Decided November 12, 2013

        On certification to the Superior Court, Appellate Division.

        Rochelle M.A. Watson, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Ms. Watson and William P. Welaj, Designated Counsel, on the briefs).

        Courtney M. Cittadini, Assistant County Prosecutor, argued the cause for respondent (James P. McClain, Acting Atlantic County Prosecutor, attorney).

    JUDGE RODRÍGUEZ, temporarily assigned, delivered the opinion of the court.

    The doctrine of merger is based on the concept that "an accused [who] committed only one offense . . . cannot be punished as if for two." State v. Davis, 68 N.J. 69, 77 (1975). As such, "[m]erger implicates a defendant's substantive constitutional rights." State v. Miller, 108 N.J. 112, 116

1

(1987); accord State v. Truglia, 97 N.J. 513, 522 (1984); Davis, supra, 68 N.J. at 77.  "Not only does merger have sentencing ramifications, it also has a measurable impact on the criminal stigma that attaches to a convicted defendant."  State v. Rodriguez, 97 N.J. 263, 271 (1984).

In this appeal, considering the application of merger principles, we hold, consistent with the approach utilized in State v. Diaz, 144 N.J. 628 (1996), that a conviction for third-degree possession of a weapon for an unlawful purpose must merge with a conviction for first-degree aggravated manslaughter when the evidence does not support the existence of another unlawful purpose for possession of the weapon.

## I.

Defendant, Troy N. Tate, was convicted by a jury of the first-degree aggravated manslaughter of Sheri Farren and related offenses.  The evidence revealed that defendant, Farren, Farren's boyfriend Paul Freas, Frank Mulholland, and Kevin Green were homeless acquaintances.  Farren, Freas, and Mulholland would often drink and panhandle for money together on the Atlantic City boardwalk.

Mulholland testified that, on the night of March 24, 2007, he met Farren and Freas on the boardwalk.  They went to a small room under Boardwalk Hall where they found Green asleep. Mulholland had been drinking all day.  After arriving at the

2

room, the group drank a substantial quantity of vodka and beer. At some point that night, Mulholland and Green fell asleep and Freas left the room.

Mulholland awoke and saw defendant standing over Farren, yelling at her, and swinging a club-like object. Mulholland, however, was not sure if defendant was hitting Farren, and asked defendant what was going on. Defendant did not respond and left the room. Mulholland asked Farren if she needed help. She asked him to find Freas. Mulholland recalled that Farren said something before he left to find Freas about some damaged playing cards. Mulholland noted that defendant had shown him a large novelty deck of playing cards a few days earlier.

Mulholland left the room and did not return. He spent the rest of the night looking for Freas, and only learned of Farren's death from a subsequent conversation with a police officer.

Green testified that he awoke that evening and saw defendant swinging a caulking gun with two hands, striking Farren on her back, legs, and head. Green heard defendant yelling about a torn playing card. Green left the room to purchase cigarettes. When he returned ten minutes later, defendant was still striking Farren and yelling about the torn playing card.

3

Defendant struck Farren approximately five more times.  The attack ended when Mulholland intervened.  Farren declined Green's offer to call an ambulance.  Green went back to sleep and awoke around 8:00 a.m.  He asked Farren if she was okay and when Farren did not respond, Green left the room.  He later learned of Farren's death from a police officer.

The medical examiner testified that Farren died on the morning of March 25, 2007, from "massive bleeding into the abdominal cavity due to blunt force injury" to her torso and lacerations to the spleen.  Additionally, Farren suffered several injuries to her head and torso, which were consistent with blunt force trauma.

The police arrived at the scene as a result of a call from a circus worker and security guard, who discovered Farren's body.  After speaking with Green and Mulholland, the police identified defendant as a suspect.  When the police arrested and searched defendant, they discovered a large deck of novelty playing cards that contained a torn ace of clubs.  The weapon used in the homicide was never recovered.

II.

Following a jury trial, defendant was convicted of first-degree aggravated manslaughter, N.J.S.A. 2C:11-4a; second-degree aggravated assault, N.J.S.A. 2C:12-1b(1); third-degree aggravated assault, N.J.S.A. 2C:12-1b(2); and third-degree

4

possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4d. The judge did not merge any of the convictions and imposed a sixty-year term, subject to a period of parole ineligibility in accordance with the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, on the aggravated manslaughter conviction; a concurrent ten-year term, with a NERA ineligibility period, on the second-degree aggravated assault conviction; a concurrent five-year term on the third-degree aggravated assault conviction; and a concurrent five-year term on the possession of a weapon for an unlawful purpose conviction.

Defendant appealed. The Appellate Division affirmed the convictions but merged the convictions for second and third-degree aggravated assault into the first-degree aggravated manslaughter conviction. Citing State v. Bowens, 108 N.J. 622, 638 (1987), the panel reasoned that, although the elements of the offenses were technically different, the same evidence was submitted to establish the assault and manslaughter charges. However, the panel rejected defendant's argument that the conviction for possession of a weapon for an unlawful purpose should be merged with the aggravated manslaughter conviction. Again relying on Bowens, supra, 108 N.J. at 639, the panel explained that "each offense requires proof of a fact not required by the other." We granted defendant's petition for

certification limited to the issue of merger.  State v. Tate, 210 N.J. 119 (2012).

                                III.

In this appeal, defendant contends, relying on Diaz, that the possession of a weapon for an unlawful purpose conviction should merge with the aggravated manslaughter conviction because the State did not present a broader purpose for possessing the weapon other than to commit the substantive offense of aggravated manslaughter against Farren.  Defendant emphasized that the jury was specifically instructed that his unlawful purpose was "to assault Sheri Farren."

Defendant argues that the Appellate Division and the State's reliance on Bowens is misplaced because that case utilized a rigid analysis that has been eschewed by the Court in subsequent decisions -- namely, that merger is not required when each offense "may be established by proof of a different fact which the other does not require."  Bowens, supra, 108 N.J. at 639.  Pursuant to the Bowens approach, defendant argues that possession of a weapon for an unlawful purpose would never merge with a substantive offense, regardless of the facts of each case.  Defendant argues that in Diaz, supra, 144 N.J. at 637-38, the Court abandoned such rigid approach.

The State responds that, pursuant to the holding in Bowens, the possession count should not merge because "the facts

                                6

necessary to establish aggravated manslaughter are different from the facts required for possession of a weapon for an unlawful purpose." It explains that the two crimes are distinct because they require discrete elements. Specifically, the State argues that possession of a weapon for an unlawful purpose requires purposeful or knowing conduct, a more culpable state of mind than that needed to convict for aggravated manslaughter, which only requires reckless conduct.

IV.

Generally, in determining whether to merge a defendant's convictions,

> "[the Court] follow[s] a 'flexible approach' . . . that 'requires us to focus on the "elements of the crimes and the Legislature's intent in creating them," and on "the specific facts of each case."' The overall principle guiding merger analysis is that a defendant who has committed one offense '"cannot be punished as if for two."' Convictions for lesser-included offenses, offenses that are a necessary component of the commission of another offense, or offenses that merely offer an alternative basis for punishing the same criminal conduct will merge."
>
> [State v. Hill, 182 N.J. 532, 542 (2005) (quoting State v. Brown, 138 N.J. 481, 561 (1994), overruled on other grounds by State v. Cooper, 151 N.J. 326 (1997) (citations omitted)).]

N.J.S.A. 2C:1-8a sets forth the parameters for merging offenses. It provides:

7

> a. Prosecution for multiple offenses; limitation on convictions. When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if:
>
> (1) One offense is included in the other, as defined in subsection d. of this section;
>
> . . . .
>
> d. Conviction of included offense permitted. A defendant may be convicted of an offense included in an offense charged whether or not the included offense is an indictable offense. An offense is so included when:
>
> (1) <u>It is established by proof of the same or less than all the facts required to establish the commission of the offense charged</u> . . . .
>
> [(emphasis added).]

However, "'[t]he standard for merger of offenses set forth by <u>N.J.S.A.</u> 2C:1-8, providing that offenses are different when each requires proof of facts not required to establish the other, has been characterized as "mechanical."'" <u>Hill</u>, <u>supra</u>, 182 <u>N.J.</u> at 542 (quoting <u>Diaz</u>, <u>supra</u>, 144 <u>N.J.</u> at 637-38). Consequently, the standard articulated in <u>Davis</u>, which preceded the enactment of the New Jersey Criminal Code, is a "'preferred and more flexible standard.'" <u>Ibid.</u> (quoting <u>Diaz</u>, <u>supra</u>, 144 <u>N.J.</u> at 637). In <u>Davis</u>, <u>supra</u>, the Court noted that

> [s]uch an approach would entail analysis of the evidence in terms of, among other things, the time and place of each purported

8

> violation; whether the proof submitted as to one count of the indictment would be a necessary ingredient to a conviction under another count; whether one act was an integral part of a larger scheme or episode; the intent of the accused; and the consequences of the criminal standards transgressed.
>
> [68 N.J. at 81.]

In Diaz, supra, the Court addressed the issue of "whether a conviction for possession of a firearm for an unlawful purpose should merge with a conviction for passion/provocation manslaughter when the trial court did not instruct the jury with respect to an unlawful purpose that was broader than, and separate from, using the firearm to commit the homicide." 144 N.J. at 632. The charges arose out of an altercation that began in a playground when the victim bumped the injured hand of the defendant, Diaz. Id. at 632-33. Diaz left the playground and returned less than a half hour later with two of his friends. Id. at 633. Diaz was aware that one of his friends was carrying a gun, and he approached the victim and threatened that he had a gun. Ibid. The victim replied that he too was armed. Ibid. Diaz and the victim began to fight, and the defendant's friend "fired one shot into the air." Ibid. Just after that shot, Diaz's friend gave him the gun, and Diaz fatally shot the victim five times. Ibid. Diaz fled, and the victim's cousin gave

9

chase.  Ibid.  Turning towards the cousin, Diaz said, "[d]on't come near me, he made me do it," and left.  Ibid.

Diaz was convicted of second-degree passion/provocation manslaughter and second-degree possession of a firearm for an unlawful purpose and sentenced separately for each conviction. Id. at 633-34.  The Appellate Division reversed and ordered merger.  Id. at 634.  On certification to this Court, the State argued that the charges should not merge because Diaz constructively possessed the gun when threatening the victim, and Diaz also used the gun to shoot the victim and to threaten the victim's cousin.  Id. at 634-35.

This Court noted that "[w]hen the only unlawful purpose in possessing the gun is to use it to commit the substantive offense, merger is required."  Id. at 636; see also State v. Loftin, 287 N.J. Super. 76, 111-12 (App. Div.), certif. denied, 144 N.J. 175 (1996).  Thus, if a "jury is explicitly instructed that the unlawful purpose was to use the gun against the victim of the substantive offense, unless that unlawful purpose extended over a substantial period, merger is required notwithstanding that the evidence was sufficient to support a separate unlawful purpose."  Diaz, supra, 144 N.J. at 641 (citing State v. Williams, 213 N.J. Super. 30, 36 (App. Div. 1986), certif. denied, 107 N.J. 104 (1987)).

10

Importantly, the Court further explained that merger is not required, however, when the weapon possession is for a broader purpose. For example, using a gun to commit a substantive offense, like robbery, and also using the gun "to frighten and prevent eyewitnesses from informing the police" does not require merger. Id. at 636-37.

Thus, the Diaz Court held that

> when a trial court declines to use a special verdict but there is sufficient evidence before the jury to support a finding of a broader purpose to use the weapon unlawfully, and the trial court gives a proper jury instruction that does not include an instruction that the unlawful purpose is the same as using the weapon to commit the substantive offense, merger is not required.

> [Id. at 638-39 (citations omitted).]

When a jury's verdict is ambiguous as to whether defendant had a broader purpose in possessing the firearm than committing the substantive offense, the Court adopted a four-prong test to determine if merger is required, described as follows:

> (1) the defendant must have been charged in the indictment with possession of the weapon with a broader unlawful purpose, either generally or specifically, than using the weapon to kill or assault the victim of the greater offense, (2) the evidence must support a finding that the defendant had a broader unlawful purpose, (3) the judge must have instructed the jury of the difference between possession with the specific unlawful purpose of using the weapon against the victim of the greater

11

> offense and a broader unlawful purpose and (4) the verdict must express the jury's conclusion that the defendant had a broader unlawful purpose.
>
> [Id. at 639 (quoting Williams, supra, 213 N.J. Super. at 36).]

Applying that test, the Diaz Court concluded that, although the first two factors were satisfied, the third and fourth factors were not because "the trial court did not instruct the jury what the alleged unlawful purposes were based on the evidence presented." Id. at 640. The Court noted that it is essential for a trial judge to "relate the specific unlawful purpose charged to the facts of the case" because the jury is unqualified to determine which purposes are unlawful, pursuant to N.J.S.A. 2C:39-4a, without guidance from the court. Ibid. (internal quotation marks and citations omitted). Thus, to give proper guidance, a "jury instruction 'must include an identification of such unlawful purposes as may be suggested by the evidence.'" Ibid. (quoting State v. Petties, 139 N.J. 310, 319 (1995)).

The Court held that because the jury instructions at hand did not define the other unlawful purposes, which were suggested by the evidence, "[the Court] do[es] not know, and may not assume, that the verdict on possession of the gun for an unlawful purpose was for a broader unlawful purpose than the manslaughter." Ibid. Accordingly, because "the only unlawful

12

purpose submitted to the jury was possession of the gun to use it in the killing," merger was required.  Id. at 642.

In Bowens, supra, the case on which the State relies, the Court merely determined whether a defendant's conviction for possession of a weapon for an unlawful purpose should merge with his conviction for aggravated manslaughter.  108 N.J. at 639. In that decision, which consolidated two appeals, the Court devoted most of its consideration to the issue of whether two defendants were incorrectly denied jury charges on imperfect self-defense.  Id. at 626-37.  However, one defendant, Tyrone Rivers, also argued "that his conviction for possession of a weapon for an unlawful purpose should have been merged with his conviction of aggravated manslaughter."  Id. at 638.

Rivers and the victim met in a bar and drank together before leaving for a restaurant where Rivers worked.  Id. at 635.  At the restaurant, they engaged in sexual relations in a back room and, after re-entering the restaurant area, they became involved "in an argument over [Rivers's] attention to others."  Ibid.  Allegedly, the victim picked up a knife and threatened Rivers.  Ibid.  "When the victim moved away, [Rivers] reached behind a counter and picked up a kitchen knife."  Ibid. Rivers claimed that the victim "came back at him," and, believing that he was going to be attacked, Rivers fatally stabbed the victim.  Ibid.

13

The Court determined that merger of Rivers's two convictions was not required because "each may be established by proof of a different fact which the other does not require." Id. at 639. Accordingly, the Court held that there was "no mistake of judgment resulting in double punishment." Ibid.

V.

The approach to determine merger of offenses used in Diaz is applicable here. The evidence tends to prove that defendant possessed the weapon unlawfully only to commit the substantive offense. No broader unlawful purpose was supported directly or circumstantially by the evidence.

The Diaz approach to analyzing merger is the governing standard. The Court may consider factors such as

> "the time and place of each . . . violation; whether the proof submitted as to one count . . . would be . . . necessary . . . to a conviction under [the other] count; whether one act was . . . part of a larger scheme . . .; the intent of the accused; and the consequences of the criminal standards transgressed."
>
> [Diaz, supra, 144 N.J. at 638 (quoting Davis, supra, 68 N.J. at 81).]

On application of these factors in this case, merger is appropriate.

Here, each charge arose at the same time and from the same conduct. Both the possession of the weapon for an unlawful purpose and the aggravated manslaughter resulted from a single

14

course of conduct. No other conduct led to the charges. Additionally, both charges require proof of the same fact: that defendant beat Farren with the caulking gun. Despite the differing levels of culpability between the charges -- recklessly causing a death and purposeful unlawful possession of a weapon -- defendant's intent on both counts arguably included purposeful conduct. See State v. Jenkins, 178 N.J. 347, 362-64 (2004). In Jenkins, the Court reasoned that reckless behavior leading to death can stem from a conscious disregard of "a known risk that created the possibility or probability that death would follow from [the] conduct." Id. at 364. Thus, the purposeful use of a blunt object to strike Farren, without the intention of causing death, is conduct culpable of both aggravated manslaughter and possession of a weapon for an unlawful purpose.

The consequences of the criminal transaction, even if the charges are merged, are severe. Defendant was sentenced to a sixty-year term of imprisonment with eighty-five percent parole ineligibility on the aggravated manslaughter charge. On the other hand, the conviction of possession of a weapon for an unlawful purpose resulted in a concurrent five-year term. In terms of the consequences of the criminal act, "the predominant legislative purpose, judged by the severity of the

15

sentence," has been served even if the charges are merged. State v. Mirault, 92 N.J. 492, 504 (1983).

There is a tension between the Diaz and Bowens holdings. As illustrated by Hill and Diaz, Bowens appears to be an outlier in post-Code merger cases. The cases not requiring merger have had clear statutory differences illustrating legislative intent to fractionalize a course of conduct. See, e.g., Miller, supra, 108 N.J. at 120-21 (finding legislative intent to punish both sexual assault and endangering welfare of child based not only on specific conduct but also on violation of parental duty); contra Mirault, supra, 92 N.J. at 503-05 (finding overlapping legislative intent between first-degree robbery and second-degree aggravated assault requiring merger). Courts have also declined to merge charges when a separate unlawful purpose for possession of a weapon is present. See, e.g., Truglia, supra, 97 N.J. at 521-22 (holding that defendant had separate unlawful purpose when he chased his victim with gun in his hand before later wounding him with gun).

We have determined, however, that the better course is to follow Diaz in deciding this and future merger disputes. See State v. Ciuffini, 164 N.J. Super. 145, 152 (App. Div. 1978) ("Where more recent decisions of the Supreme Court plainly undermine the authority of a prior decision although not

16

squarely and explicitly overruling it, we are entitled to follow the current doctrine and need not be confined by the prior ruling."). We need not be confined by Bowens. Indeed, the facts of this case fall squarely within the framework of Diaz.

Diaz, supra, plainly states that "[w]hen the only unlawful purpose in possessing the [weapon] is to use it to commit the substantive offense, merger is required." 144 N.J. at 636. Unlike the defendant in Diaz, who threatened the victim before shooting him and threatened an eyewitness when fleeing from the scene, defendant here had no broader unlawful purpose for possessing the weapon. See id. at 632-33, 636-37.

Furthermore, the Court's opinion in Diaz is clear: "When the jury is explicitly instructed that the unlawful purpose was to use the gun against the victim of the substantive offense . . . merger is required notwithstanding that the evidence was sufficient to support a separate unlawful purpose." Id. at 641. This case contains no evidence to support a separate unlawful purpose, and, significantly, the jury was specifically instructed that defendant's unlawful purpose was "to assault Sheri Farren." Thus, under the Diaz rationale, merger is required because the evidence against defendant was that he possessed a weapon for the purpose of

17

beating Farren with it -- the substantive offense.  See id. at 639 (quoting Williams, supra, 213 N.J. Super. at 36).

VI.

The judgment of the Appellate Division is reversed, and the matter is remanded to the Law Division for correction of the judgment of conviction to reflect that the conviction for possession of a weapon for an unlawful purpose merges into the aggravated manslaughter conviction.

CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, PATTERSON; and JUDGE CUFF (temporarily assigned) join in JUDGE RODRÍGUEZ's opinion.

18

**SUPREME COURT OF NEW JERSEY**

NO. __A-99__          SEPTEMBER TERM 2011

ON CERTIFICATION TO _____Appellate Division, Superior Court_____

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

             v.

TROY N. TATE,

      Defendant-Appellant.

DECIDED _____November 12, 2013_____
          Chief Justice Rabner_____ PRESIDING
OPINION BY _____Judge Rodríguez (temporarily assigned)_____
CONCURRING/DISSENTING OPINIONS BY _____
DISSENTING OPINION BY _____

| CHECKLIST | REVERSE AND REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUDGE RODRÍGUEZ (t/a) | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 6 | |