NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2021-20

STATE OF NEW JERSEY,

      Plaintiff-Appellant/
      Cross-Respondent,

v.

JESUS M. HERRERA, a/k/a
JOSE HERRERA,

      Defendant-Respondent/
      Cross-Appellant.

_____

APPROVED FOR PUBLICATION

January 3, 2022

APPELLATE DIVISION

Submitted October 6, 2021 – Decided January 3, 2022

Before Judges Hoffman, Whipple, and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 18-08-0668.

Camelia M. Valdes, Passaic County Prosecutor, attorney for appellant (Mark Niedziela, Assistant Prosecutor, of counsel and on the  briefs).

Law Offices of Brian J. Neary, attorneys for respondent (Brian J. Neary, of counsel; Blaine D. Benson, on the briefs).

The opinion of the court was delivered by

SUSSWEIN, J.A.D.

The State appeals from the trial court's decision to impose concurrent state prison terms on defendant's jury trial convictions for leaving the scene of a fatal motor vehicle accident, N.J.S.A. 2C:11-5.1, and endangering an injured victim, N.J.S.A. 2C:12-1.2. The State contends the trial judge imposed an illegal sentence because the statutes defining both crimes require that the prison terms be served consecutively.[1] Defendant cross-appeals the sentences

[1] The State also contends that even if the relevant statutes do not mandate consecutive sentences, the trial judge abused his discretion in ordering concurrent sentences applying the principles established in State v. Yarbough, 100 N.J. 627, 643–44 (1985). We note, however, that the State may only appeal a sentence on the grounds that it is illegal; the State does not have the authority to appeal the sentence based on an alleged abuse of judicial discretion.

In State v. Hyland, the Court held that the State has the authority to appeal a sentence in only two circumstances: where there is express statutory authority to do so, or if the sentence imposed is illegal. 238 N.J. 135, 143 (2019) (first citing State v. Roth, 95 N.J. 334, 343 (1984); and then citing State v. Ciancaglini, 204 N.J. 597, 605 (2011)). The Court further explained that "[t]here are two categories of illegal sentences: those that exceed the penalties authorized for a particular offense, and those that are not authorized by law." Id. at 145 (citing State v. Schubert, 212 N.J. 295, 308 (2012)). Those two categories of illegal sentences, moreover, have been "defined narrowly." Ibid. (quoting State v. Murray, 162 N.J. 240, 246 (2000)). The Court emphasized that, "even sentences that disregard controlling case law or rest on an abuse of discretion by the sentencing court are legal so long as they impose penalties authorized by statute for a particular offense and include a disposition that is authorized by law." Id. at 146. The Hyland Court concluded that the State could not appeal a special probation Drug Court sentence based on the judge's finding of discretionary statutory factors, noting that "[a] finding to the contrary would conflate sentence illegality with judicial abuse of discretion, and undermine this Court's consistently narrow construct of which sentences it

that were imposed, arguing that the trial judge should have merged the two convictions.

This case arises from a tragic motor vehicle accident in which defendant's pickup truck struck and killed a pedestrian. Defendant was not charged with vehicular homicide, N.J.S.A. 2C:11-5, nor any other crime relating to the manner in which he operated his vehicle. In other words, defendant was not charged with, much less convicted of, purposely, knowingly, or even recklessly striking the victim with his vehicle. Rather, with respect to both crimes for which defendant was convicted at trial, the culpable act was leaving the scene of the fatal accident without stopping to render aid or call for emergency medical assistance.

We first address the arguments raised in defendant's cross-appeal because the decision whether to impose consecutive or concurrent prison terms necessarily presupposes that a defendant has been convicted of at least two separate crimes. The threshold question on appeal, therefore, is whether defendant's two convictions merge, in which event he will have been convicted of but a single crime for purposes of sentencing.

_____

deems illegal." Id. at 147. Accordingly, the State in this case may not appeal the imposition of concurrent sentences based on a claim that the trial court abused its discretion in applying the discretionary Yarbough factors.

A-2021-20

After carefully reviewing the record in view of the "flexible" multi-faceted test embraced by our Supreme Court on multiple occasions, we conclude that in the circumstances of this case, the convictions for leaving the scene of a fatal motor vehicle accident and endangering an injured victim constitute a single criminal offense and thus should have been merged. That conclusion renders academic the question of whether consecutive sentences should have been imposed. We remand for the trial court to amend the judgment of conviction accordingly.

I.

We begin by summarizing the relevant facts and procedural history. On November 11, 2017, at around 9:00 p.m., defendant struck the victim with his truck, tapped on his brakes, and drove away. The accident was recorded on surveillance cameras, which show defendant traveling between an estimated 39.4 and 55.8 miles-per-hour. The surveillance recordings also show that the victim did not use the crosswalk.

Police and EMS responders found the victim unconscious and unresponsive. Their efforts to administer CPR on the scene and while en route to the hospital were unsuccessful. The victim was pronounced dead at the hospital at approximately 9:42 p.m. The autopsy determined that the cause of

death was "blunt impact injuries of torso and extremities" and the manner of death was determined to be "accident[al]."

A private citizen had followed defendant's truck after the collision, told defendant he had struck someone, and brought defendant back to the scene of the accident, whereupon he was arrested. Defendant consented to provide blood samples, which indicated that while he had consumed alcohol, his blood alcohol content was below the legal limit for operating a vehicle. Police brought the defendant to the prosecutor's office, where he admitted that he had collided with the victim. The defendant stated that he was driving home and claimed to be travelling at about twenty-five to thirty-five miles-per-hour. He stated that he did not see the victim because it was dark and because the victim was crossing between two cars. Defendant explained that he did not stop after the accident because he was nervous. He was charged by summons with the non-indictable offense of leaving the scene of a motor vehicle accident resulting in injury or death, N.J.S.A. 39:4-129.

In November 2017, a grand jury returned an indictment charging defendant with two counts: second-degree leaving the scene of a motor vehicle accident under certain circumstances, N.J.S.A. 2C:11-5.1 (leaving-the-scene), and third-degree endangering an injured victim, N.J.S.A. 2C:12-1.2(a)

(endangering). In January 2020, defendant was tried before a jury and was found guilty of both counts.[2]

The sentencing hearing was convened on March 26, 2021. At the outset of the hearing, the judge determined that the two indictable convictions do not merge. So far as the record before us reflects, defendant never argued that the convictions should be merged; rather, the gravamen of defendant's legal argument at the sentencing hearing was that the sentences should run concurrently. Accordingly, the sentencing judge provided only a limited statement of reasons explaining her decision not to merge the convictions as compared to the more comprehensive statement of reasons the judge provided for her decision to impose concurrent sentences.

The State raises the following contentions for our consideration:

---

[2] The trial judge, sitting as a municipal court judge pursuant to Rule 3:15-3, found defendant guilty of the non-indictable offense of leaving the scene of an accident resulting in injury or death, N.J.S.A. 39:4-129. The judge merged the sentence for the Title 39 offense into the conviction for violation of N.J.S.A. 2C:11-5.1, and imposed a $2,500 fine, court costs, and a one-year suspension of driving privileges. See State v. Frank, 445 N.J. Super. 98, 109–10 (App. Div. 2016) (noting that "merger was appropriate because by definition the criminal offense [N.J.S.A. 2C:12-1.1] incorporates the motor vehicle violation [N.J.S.A. 39:4-129]" and "notwithstanding the merger, the court was required to impose the sentences mandated by N.J.S.A. 39:4-129(a) . . . .").

POINT I:

THE SENTENCING JUDGE ABUSED HER DISCRETION BY ERRONEOUSLY SENTENCING DEFENDANT TO A CONCURRENT TERM OF FOUR YEARS INSTEAD OF A CONSECUTIVE TERM OF FOUR YEARS AND MUST BE REVERSED.

Defendant raises the following contentions for our consideration in his cross-appeal:

POINT I:

THE TRIAL COURT ERRED IN FAILING TO MERGE THE CONVICTION FOR LEAVING THE SCENE OF A FATAL ACCIDENT, N.J.S.A. 2C:11-5.1, WITH THE CONVICTION FOR ENDANGERING AN INJURED VICTIM, N.J.S.A. 2C:12-1.2, FOR PURPOSES OF SENTENCING.

POINT II:

IN THE ALTERNATIVE, THE TRIAL COURT'S DECISION TO SENTENCE [DEFENDANT] TO A CONCURRENT TERM SHOULD BE AFFIRMED.

The State makes the following arguments in response to defendant's cross-appeal:

POINT I

THE TRIAL COURT DID NOT FAIL TO MERGE THE CONVICTION AS N.J.S.A. 2C:11-5.1, LEAVING THE SCENE OF A FATAL ACCIDENT, AND N.J.S.A. 2C:12-1.2, ENDANGERING AN INJURED VICTIM, ARE PROHIBITED FROM BEING MERGED UNDER THE FACTS OF THIS

7

CASE; THE SENTENCING JUDGE ABUSED HER DISCRETION BY ERRONEOUSLY SENTENCING DEFENDANT TO A CONCURRENT TERM OF FOUR YEARS INSTEAD OF A CONSECUTIVE TERM OF FOUR YEARS AND MUST BE REVERSED.

## II.

We begin our analysis by acknowledging the foundational legal principles governing this appeal. When the meaning of a statute is not at issue, we review a judge's sentencing decision under an abuse of discretion standard. See State v. Fuentes, 217 N.J. 57, 70 (2014). This case, however, focuses on an interpretation of the statutes that define the two crimes for which defendant was convicted and the statutory framework for deciding whether those convictions merge. We therefore apply a de novo review to "discern and effectuate the legislative intent underlying the statutory provision[s] at issue." State ex rel. K.O., 217 N.J. 83, 91–92 (2014); see also State v. Vargas, 213 N.J. 301, 327 (2013) (citing State v. Gandhi, 201 N.J. 161, 176 (2010)).

The case law governing the merger of crimes has evolved. At its core, the doctrine of merger is based on the precept that "an accused [who] committed only one offense . . . cannot be punished as if for two." State v. Davis, 68 N.J. 69, 77 (1975). Although our Supreme Court has "not determined whether that prohibition rests on principles of double jeopardy, due

8

process or some other legal tenet," it is beyond dispute that "merger implicates a defendant's substantive constitutional rights." State v. Cole, 120 N.J. 321, 326 (1990) (first citing Davis, 68 N.J. at 76; and then citing State v. [John] Miller, 108 N.J. 112, 116 (1987)).

N.J.S.A. 2C:1-8(a) provides general guidance on when offenses merge. That statute provides in pertinent part:

> a. When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if:
>
> (1) One offense is included in the other, as defined in subsection d. of this section;
>
>      . . . .
>
> (4) The offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct.
>
>      . . . .
>
> d. Conviction of included offense permitted.  A defendant may be convicted of an offense included in an offense charged whether or not the included offense is an indictable offense.  An offense is so included when:
>
> (1) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged . . . .

In State v. Bowens, the Court, relying on N.J.S.A. 2C:1-8, held that merger is not required when each offense "may be established by proof of a different fact which the other does not require." 108 N.J. 622, 639 (1987). The Bowens test is simple and straightforward. However, that standard "has been characterized as 'mechanical.'" State v. Tate, 216 N.J. 300, 307 (2013) (quoting State v. Hill, 182 N.J. 532, 542 (2005)).

In Cole, the Court used a different approach, explaining that

> [i]n determining legislative intent, we analyze the statutes to determine whether the Legislature intended to protect different interests, and whether merger makes sense in the context of the Code's overall sentencing scheme. We also consider specific elements of the offenses in light of the New Jersey Code of Criminal Justice (Code) merger provision, N.J.S.A. 2C:1-8 . . . .
>
> [120 N.J. at 327.]

In State v. Diaz, the Supreme Court eschewed the mechanical analysis used in Bowens in favor of a more "flexible" approach. 144 N.J. 628, 643 (1996). Noting the tension between the Diaz and Bowens holdings, the Court more recently in Tate made clear that "the better course is to follow Diaz in deciding this and future merger disputes." 216 N.J. at 312. The Court explained that this flexible approach focuses on the "'elements of the crimes and the Legislature's intent in creating them,' and on 'the specific facts of each case.'" 216 N.J. at 306 (quoting Hill, 182 N.J. at 542 (quoting State v. Brown,

138 N.J. 481, 561 (1994), overruled on other grounds by <u>State v. Cooper</u>, 151 N.J. 326 (1997))).

Most recently in <u>State v. [Michael] Miller</u>, the Court reaffirmed that we are to use the more flexible approach to merger issues, stressing that convictions for "offenses that merely offer an alternative basis for punishing the same criminal conduct will merge."  237 N.J. 15, 33 (2019) (quoting <u>Brown</u>, 138 N.J. at 561).  With respect to the fact-sensitive portion of the multi-part merger test, the Court explained that the flexible standard entails,

> [the] analysis of the evidence in terms of, among other things, the time and place of each purported violation; whether the proof submitted as to one count of the indictment would be a necessary ingredient to a conviction under another count; whether one act was an integral part of a larger scheme or episode; the intent of the accused; and the consequences of the criminal standards transgressed.
>
> [<u>Ibid.</u> at 33 (alteration in original) (quoting <u>Davis</u>, 68 N.J. at 81).]

The Court in <u>Miller</u> further explained,

> Guidance also arises from the principle that "the Legislature may fractionalize a single criminal episode into separate offenses when the Legislature intends them to be punished separately and when the fractionalization does not offend constitutional principles."  Stated differently, "the [L]egislature is empowered to split a single, continuous transaction into stages, elevate each stage to a consummated crime, and punish each stage separately."

11

[Ibid. (alteration in original) (first quoting State v. Mirault, 92 N.J. 492, 504 (1983); and then citing Davis, 68 N.J. at 78).]

III.

We next apply these guiding principles to the matter before us. We begin by comparing the text of the two criminal statutes at issue.

N.J.S.A. 2C:11-5.1 reads:

> A motor vehicle operator who knows he is involved in an accident and knowingly leaves the scene of that accident under circumstances that violate the provisions of R.S. 39:4-129 shall be guilty of a crime of the second degree if the accident results in the death of another person.
>
> If the evidence so warrants, nothing in this section shall be deemed to preclude an indictment and conviction for aggravated manslaughter under the provisions of N.J.S.2C:11-4, reckless vehicular homicide under the provisions of N.J.S.2C:11-5 or strict liability vehicular homicide under the provisions of section 1 of P.L.2017, c. 165 (C.2C:11-5.3).
>
> Notwithstanding the provisions of N.J.S.2C:1-8 or any other provisions of law, a conviction arising under this section shall not merge with a conviction for aggravated manslaughter under the provisions of N.J.S.2C:11-4, reckless vehicular homicide under the provisions of N.J.S.2C:11-5 or strict liability vehicular homicide under the provisions of section 1 of P.L.2017, c.165 (C.2C:11-5.3) and a separate sentence shall be imposed upon each such conviction.
>
> Notwithstanding the provisions of N.J.S.2C:44-5 or any other provisions of law, when the court imposes

multiple sentences of imprisonment for more than one offense, those sentences shall run consecutively.

For the purposes of this section, neither knowledge of the death nor knowledge of the violation are elements of the offense and it shall not be a defense that the operator of the motor vehicle was unaware of the death or of the provisions of R.S.39:4-129.

N.J.S.A. 2C:12-1.2 reads:

a. A person is guilty of endangering an injured victim if he causes bodily injury to any person or solicits, aids, encourages, or attempts or agrees to aid another, who causes bodily injury to any person, and leaves the scene of the injury knowing or reasonably believing that the injured person is physically helpless, mentally incapacitated or otherwise unable to care for himself.

b. As used in this section, the following definitions shall apply:

(1) "Physically helpless" means the condition in which a person is unconscious, unable to flee, or physically unable to summon assistance;

(2) "Mentally incapacitated" means that condition in which a person is rendered temporarily or permanently incapable of understanding or controlling one's conduct, or of appraising or controlling one's condition, which incapacity shall include but is not limited to an inability to comprehend one's own peril;

(3) "Bodily injury" shall have the meaning set forth in N.J.S. 2C:11-1.

c. It is an affirmative defense to prosecution for a violation of this section that the defendant summoned medical treatment for the victim or knew that medical treatment had been summoned by another person, and

13

protected the victim from further injury or harm until emergency assistance personnel arrived. This affirmative defense shall be proved by the defendant by a preponderance of the evidence.

d. A person who violates the provisions of this section shall be guilty of a crime of the third degree. Notwithstanding the provisions of N.J.S. 2C:1-8 or any other provision of law, a conviction arising under this subsection shall not merge with a conviction of the crime that rendered the person physically helpless or mentally incapacitated, nor shall such other conviction merge with a conviction under this section. Notwithstanding the provisions of N.J.S.2C:44-5 or any other provision of law, the sentence imposed pursuant to this section shall be ordered to be served consecutively to that imposed for any conviction of the crime that rendered the person physically helpless or mentally incapacitated.

e. Nothing herein shall be deemed to preclude, if the evidence so warrants, an indictment and conviction for murder, manslaughter, assault or any other offense.

Clearly, the material elements of these two offenses do not align. Although they share a common voluntary act element[3]—leaving the scene— both offenses require proof of facts that are not required by the other. The leaving-the-scene offense, for example, requires proof that the defendant is a motor vehicle operator. The endangering offense is not restricted to motor

---

[3] N.J.S.A. 2C:2-1(a) provides in pertinent part that "[a] person is not guilty of an offense unless his liability is based on conduct which includes a voluntary act or the omission to perform an act of which he [or she] is physically capable."

vehicle incidents and applies more broadly to any event where the defendant caused bodily injury. The endangering offense, moreover, requires proof that the defendant caused the bodily injury to a victim, or aided or abetted another to cause such injury.[4] The leaving-the-scene offense requires only that the actor is "involved in an accident." See State v. Sene, 443 N.J. Super. 134, 140 (App. Div. 2015) ("Nothing in the plain meaning of the phrase 'involved in an accident' requires the element of contact between the vehicle driven by defendant and the victim.").

Given these differences in the material elements of the two crimes, were the "mechanical" test to apply, convictions arising under these two crimes would not merge. Application of the multi-part flexible test, however, leads to a different conclusion.

We first consider the Legislature's intention with respect to merger. In doing so, we acknowledge that when construing statutes, "[i]n most instances, the best indicator of that intent is the plain language chosen by the Legislature." Gandhi, 201 N.J. at 176–77 (citing DiProspero v. Penn, 183 N.J. 477, 492 (2005)). We therefore first consider the plain language, and if we

_____

[4] We note that the endangering offense does not require proof that the defendant was criminally culpable for causing the injury. That is why defendant could be convicted of this offense notwithstanding that he was not charged with a crime relating to the operation of the vehicle and the collision with the victim.

find that language ambiguous, we proceed to consider the legislative history and purpose of the enactments. Gandhi, 201 N.J. at 176–77; DiProspero, 183 N.J. at 492–93; see also State v. Rangel, 213 N.J. 500, 509 (2013) (a court should "construe the meaning of [the statute], first by looking at the actual contested words and then by viewing them in the setting of a larger enactment."). We add that under the rule of lenity, ambiguities in a criminal statute are resolved in favor of the defendant. State v. Grate, 220 N.J. 317, 330 (2015) (explaining the rule of lenity applies when a penal statute's meaning cannot clearly be discerned from its plain language and extrinsic sources).

In this instance, we need not focus solely on N.J.S.A. 2C:1-8 and the cases construing the overarching framework established by that general merger provision. Both crimes at issue before us include express provisions instructing on merger that operate "[n]otwithstanding the provisions of N.J.S.[A.] 2C:1-8 or any other provision[s] of law." We thus presume that in drafting both crimes, the Legislature intended to indicate the specific circumstances in which merger would be inappropriate.

The merger provision in 2C:11-5.1 specifies the types of convictions that do not merge with a leaving-the-scene conviction: aggravated manslaughter, reckless vehicular homicide, and strict liability vehicular homicide. The plain

text thus shows conclusively that the Legislature knew how to specify the types of convictions that are not subject to merger with a conviction for N.J.S.A. 2C:11-5.1, but did so only with respect to these homicide offenses. Cf. DiProspero, 183 N.J. at 495 ("'The canon of statutory construction, expressio unius est exclusio alterius—expression of one thing suggests the exclusion of another left unmentioned—sheds some light on the interpretative analysis.'" (quoting Brodsky v. Grinnell Haulers, Inc., 181 N.J. 102, 112 (2004))). We think it is especially noteworthy that the specified non-merger crimes all require that a defendant commit a criminally culpable act resulting in death. This suggests that the Legislature only intended to preclude merger of a leaving-the-scene conviction with crimes that require proof of a voluntary criminal act besides leaving the scene.

The plain text of N.J.S.A. 2C:12-1.2(d) even more clearly suggests that a conviction for endangering does not merge with a conviction for leaving-the-scene. The express non-merger provision in the endangering statute provides, "a conviction arising under this subsection shall not merge with a conviction of the crime that rendered the person physically incapacitated, nor shall such other conviction merge with a conviction under this section." N.J.S.A. 2C:12-1.2(d) (emphasis added). The plain text thus presupposes that the conduct that rendered the victim helpless was itself a crime. In this instance, the victim was

17

not rendered physically incapacitated by the voluntary act of leaving the scene, but rather by the collision with defendant's vehicle. As we have previously noted, defendant was not charged with a crime for striking the victim with his vehicle. We thus conclude that the phrase "the crime that rendered the person physically incapacitated" as used in the endangering statute does not include the crime of leaving-the-scene defined in N.J.S.A. 2C:11-5.1.

We find further support for our interpretation of the statutes' express non-merger provisions in State v. Dillihay, 127 N.J. 42 (1992). In that case, the Court considered whether the defendant's conviction for N.J.S.A. 2C:35-5 (possession of a controlled dangerous substance with intent to distribute) merged with his conviction for N.J.S.A. 2C:35-7 (possession with intent to distribute the same controlled dangerous substance while within 1,000 feet of a school). The Legislature included an express non-merger provision in the statute defining the school zone crime. N.J.S.A. 2C:35-7(c). That provision reads, "[n]otwithstanding the provisions of N.J.S. 2C:1-8 or any other provisions of law, a conviction arising under this section shall not merge with a conviction for a violation of . . . N.J.S. 2C:35-5 . . . ." Ibid.

On its face, the plain text would seem to preclude merger. The Dillihay Court nonetheless "conclude[d] that the legislative purpose in enacting the school-zone statute [could] best be served, consistent with double-jeopardy

principles, by requiring merger of [school zone] convictions into related first- or second-degree convictions under N.J.S.A. 2C:35-5" and "requir[ing] that any sentence imposed . . . include a mandatory minimum sentence no less severe than that set forth [in the school zone statute]." 127 N.J. at 56.

In the present matter, we likewise deem it prudent to construe the non-merger provision in these two statutes to avoid double jeopardy issues. In so doing, we recognize that by merging the third-degree endangering conviction into the second-degree leaving-the-scene conviction, the sentence prescribed for a second-degree crime, including the strict presumption of imprisonment, N.J.S.A. 2C:44-1(d), applies.

We next consider whether the Legislature sought to protect different interests in enacting the leaving-the-scene and endangering crimes. See Cole, 120 N.J. at 327 ("In determining legislative intent, we analyze the statutes to determine whether the Legislature intended to protect different interests . . . ."). We begin our examination of that question by noting that the leaving-the-scene statute focuses specifically on absconding from the scene of a motor vehicle accident. The endangering statute has a broader scope, applying more generally to absconding from the scene of an injury that was caused by the actor in any manner—such as an assault—and not just by a motor vehicle collision. The penal code's general merger statute instructs in this regard that a

defendant may not be convicted of more than one offense if "[t]he offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct." N.J.S.A. 2C:1-8(a)(4).

Furthermore, both crimes are designed essentially to serve the same purpose, that is, to protect injured individuals by creating incentives for persons to remain at the scene of an injury, to report the incident, and to render or summon aid. The leaving-the-scene crime expressly incorporates by reference the reporting and rendering-assistance duties established in N.J.S.A. 39:4-129.[5] The endangering statute, meanwhile, creates an affirmative defense

---

[5] N.J.S.A. 39:4-129 provides in pertinent part:

> (a) The driver of any vehicle, knowingly involved in an accident resulting in injury or death to any person shall immediately stop the vehicle at the scene of the accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene until he has fulfilled the requirements of subsection (c) of this section.
>
>      . . . .
>
> (c) The driver of any vehicle knowingly involved in an accident resulting in injury or death to any person or damage to any vehicle or property shall give his name and address and exhibit his operator's license and registration certificate of his vehicle to the person injured or whose vehicle or property was damaged and

"that the defendant summoned medical treatment for the victim or knew that medical treatment had been summoned by another person, and protected the victim from further injury or harm until emergency assistance personnel arrived."  N.J.S.A. 2C:12-1.2(c).  Accordingly, both statutes use the threat of criminal sanction to deter absconding from the scene of an injury and to encourage persons to take affirmative steps to protect injured individuals.  We therefore conclude that both statutes protect the same interests and, in practical effect, offer an alternative basis for punishing the same conduct.  See [Michael] Miller, 237 N.J. at 33 (explaining that "[c]onvictions for . . . offenses that merely offer an alternative basis for punishing the same criminal conduct will merge.") (quoting Brown, 138 N.J. at 561).

Finally, we turn to the fact-sensitive component of the flexible standard for merger.  The trial court at sentencing found, "[h]ere, the criminal act in both offenses is the act of leaving the scene.  The [c]ourt finds that the defendant's act of leaving only occurred once.  That is, it's the single act of leaving the scene which forms the basis of both offenses."

> to any police officer or witness of the accident, and to the driver or occupants of the vehicle collided with and render to a person injured in the accident reasonable assistance, including the carrying of that person to a hospital or a physician for medical or surgical treatment, if it is apparent that the treatment is necessary or is requested by the injured person.

As we have noted, in <u>Miller</u>, the Court reaffirmed that "the Legislature may fractionalize a single criminal episode into separate offenses when the Legislature intends them to be punished separately and when the fractionalization does not offend constitutional principles." <u>Ibid.</u> (citing <u>Mirault</u>, 92 N.J. at 504 (1983)). Stated differently, "the [L]egislature is empowered to split a single, continuous transaction into stages, elevate each stage to a consummated crime, and punish each stage separately." <u>Ibid.</u> (quoting <u>Davis</u>, 68 N.J. at 78).

In the matter before us, however, there was no continuous transaction to split into stages. The only criminal conduct attributed to defendant was his decision to leave the scene. The crime was initiated and completed in a brief instant. So too, other fact-sensitive questions that are posed in <u>Miller</u> are either inapposite or militate in favor of merger. As to the "time and place of each purported violation," <u>ibid.</u>, both crimes were committed in the same place at exactly the same time. As to the question "whether one act was an integral part of a larger scheme or episode," <u>ibid.</u>, there was no larger "scheme[,]" only a single momentary and spontaneous "episode."

In sum, considering the elements of the two crimes, the Legislature's intent in creating them, and the specific facts supporting both convictions, <u>Tate</u>, 216 N.J. at 306, we conclude that defendant's convictions for leaving-

22

the-scene and endangering must merge. Accordingly, we need not consider whether consecutive sentences should have been imposed.

The judgment of the Law Division imposing concurrent sentences is vacated and the matter is remanded to correct the judgment of conviction to reflect the merger of the conviction for third-degree endangering into the conviction for second-degree leaving-the-scene. We do not retain jurisdiction.

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION