**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3020-17T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

OSCAR A. HERNANDEZ,

     Defendant-Appellant.

_____

> Submitted September 25, 2019 – Decided October 28, 2019
>
> Before Judges Koblitz and Gooden Brown.
>
> On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 16-07-1814.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Daniel Vincent Gautieri, Assistant Deputy Public Defender, of counsel and on the brief).
>
> Damon G. Tyner, Atlantic County Prosecutor, attorney for respondent (Nicole Lynn Campellone, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Following a jury trial, defendant was convicted of second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1) (count one); third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d) (count two); and fourth-degree possession of a weapon under circumstances not manifestly appropriate for such lawful uses as it may have, N.J.S.A. 2C:39-5(d) (count three). He was sentenced to an aggregate five-year term of imprisonment, subject to an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. The convictions stemmed from a fight on the boardwalk in Atlantic City, during which defendant stabbed the victim repeatedly. The fight was captured on surveillance footage, and the video was played for the jury during the trial.

Defendant now appeals from his convictions and sentence, raising the following arguments for our consideration:

> POINT I
>
> THE PROSECUTOR COMMITTED MISCONDUCT IN SUMMATION WHEN HE STATED THAT VIDEOTAPES ARE NOT CAPABLE OF LYING AND WHEN HE INFORMED JURORS THAT THEY COULD USE COMMON SENSE TO UNDERSTAND THE TERMS "PURPOSELY" AND "KNOWINGLY."

POINT II

THE KNIFE-POSSESSION CONVICTION IN COUNT THREE SHOULD HAVE MERGED INTO THAT ON COUNT TWO, AND THE CONVICTION FOR POSSESSION OF THE KNIFE FOR AN UNLAWFUL PURPOSE IN COUNT TWO SHOULD HAVE MERGED INTO THE ASSAULT CONVICTION ON COUNT ONE. (NOT RAISED BELOW)[.]

After considering the arguments presented in light of the record and applicable law, we affirm the convictions and sentence, but remand for amendment of the judgment of conviction.

We recount the pertinent facts from the trial record. At approximately 12:30 a.m. on the morning of March 5, 2016, three friends gathered after work at Caesars Casino, Guadencio Camacho, Brian Flores, and Jose Reyes. Defendant arrived with Reyes. Over the next several hours, they gambled, drank, and socialized until Camacho and Reyes started arguing "about [Camacho's] ex-girlfriend" and "decided to go outside and fight." Flores and defendant accompanied them. According to Flores, he wanted "[t]o watch the fight and make sure that things stay[ed] clean."

Once outside on the boardwalk, instead of Camacho and Reyes fighting, Flores and defendant began arguing when Flores told defendant not to "get involved" in the fight between Camacho and Reyes. The argument became

physical when defendant pushed Flores and "lunged at [him] with a knife," ultimately stabbing Flores "[t]hree" times, twice "in the stomach" and once in his left side. Flores described the knife as a "small" "fold[ing]" knife. The entire incident, which lasted approximately four to five minutes, was captured on Caesar's surveillance video, which was played for the jury during Flores' testimony.[1] After the stabbing, once Flores "noticed that [he] was bleeding," he went inside the casino "to ask security to call the police." The police responded and apprehended defendant in a parking lot, approximately two blocks from the casino. However, no weapon was recovered from defendant's person. At the scene, while Flores was receiving medical attention in an ambulance, he identified defendant as his assailant when police brought defendant to the ambulance. Flores was transported to the hospital for treatment, and his medical records were admitted into evidence during the trial.

Following the jury verdict, the trial judge denied defendant's motion for a judgment of acquittal notwithstanding the verdict and for a new trial.[2] See R.

---

[1] Camacho also testified at the trial and largely confirmed Flores' account. According to Camacho, no one other than defendant threw punches during the entire episode.

[2] The judge had previously denied defendant's motion for a judgment of acquittal at the close of the State's case. See R. 3:18-1.

3:18-2. The judge then sentenced defendant to a five-year term of imprisonment, subject to NERA, on count one, a concurrent three-year term of imprisonment on count two, and a concurrent eighteen-month term of imprisonment on count three. A conforming judgment of conviction was entered on February 16, 2018, and this appeal followed.

In Point I, defendant argues "[t]he prosecutor committed two separate errors in summation." According to defendant, "[f]irst, the prosecutor improperly argued that the video established that [defendant] was the aggressor and that the video '[was] not capable of lying.'" Second, the prosecutor stated that "purposely or knowingly . . . were 'not just legal terms' but that jurors 'only need[ed] common sense to understand them.'" Defendant asserts these errors deprived him of a fair trial because "videos can indeed be misleading[,]" and jurors cannot "use a non-legal definition of terms contained in the indictment to reach a guilty verdict."

Courts afford prosecutors "considerable leeway" in the vigor and force of the language used in closing arguments, "so long as their comments are reasonably related to the scope of the evidence presented." State v. Timmendequas, 161 N.J. 515, 587 (1999) (citing State v. Harris, 141 N.J. 525, 559 (1995)). Thus, as long as prosecutors do "not make inaccurate legal or

factual assertions during a trial and . . . confine their comments to evidence revealed during the trial and reasonable inferences to be drawn from that evidence[,]" "what is said . . . 'by way of comment, denunciation or appeal, will afford no ground for reversal.'" State v. Smith, 167 N.J. 158, 178 (2001) (citations omitted). However, courts have "not hesitated to reverse convictions where . . . the prosecutor in his summation over-stepped the bounds of propriety and created a real danger of prejudice to the accused." State v. Johnson, 31 N.J. 489, 511 (1960).

In determining whether to reverse a conviction for improper remarks during the prosecutor's summation, an appellate court must decide whether "the prosecutor's misconduct was so egregious that it deprived the defendant of a fair trial." Frost, 158 N.J. at 83 (citations omitted). To that end, we must consider whether the defendant objected to the remarks, "whether the remarks were withdrawn[,]" and "whether the court ordered the remarks stricken from the record and instructed the jury to disregard them." Ibid. (citations omitted). Additionally, we "will consider whether the offending remarks were prompted by comments in the summation of defense counsel." State v. Smith, 212 N.J. 365, 404 (2012).

6

Here, during her summation, defense counsel attacked the victim's credibility and described him as "drunk" and unable to "remember much[.]" She explained that "[r]easonable doubt [could] be found in inconsistencies between witnesses [and] . . . in a video authenticated . . . only by a man [referring to the victim] who recognize[d] himself in the video as the man in the backpack[.]" Defense counsel described the video as "grainy" and pointed out that there was "no testimony that the video [was] complete[,]" "no evidence that the video as shown [was] whole[,]" and "no testimony that the date timestamped . . . on the video on the bottom of the screen [was] accurate."

She stated:

> If you accept the video for what it showed of the events that are said to have transpired, the video shows [a] chaotic disorganized fight. There's nothing to show as the State alleged in its opening that the defendant was aiming [at] internal organs as he threw his punches.
>
> . . . .
>
> The video shows, if you accept it as it was shown[,] at worse a mutual fight between two grown men pushing, shoving, [and] punching[.]

In response, the prosecuting attorney reminded the jurors that it was their job "to judge the credibility of the witnesses." The prosecutor explained that although the victim was "drinking[,]" this was not "a case where it[ was] just a

7

victim saying what[] happened." Instead, the victim was corroborated by a video, depicting "only one aggressor[,]" and the victim's account "match[ed] up with the video." The prosecutor stated:

> This was an attack, plain and simple. It's not complicated. The whole thing is on video. The defendant picks a fight with [Flores] and then uses a knife to finish it. . . .
>
> The video is not capable of lying. It's a recording of the attack. It's a recording of the defendant's aggression.

Following summations, defense counsel objected to the prosecutor "[s]aying the video [was] not capable of lying." The judge overruled the objection, noting she did "not think the prosecutor . . . overstepped his bounds under the circumstances . . . ." We agree. The comment countered defense counsel's attacks on the victim's credibility, the video's reliability, and the characterization of the altercation as a mutual fight. In any event, the video spoke for itself, and the judge promptly instructed the jurors that "what the attorneys have just said to you in closings is not evidence." Rather, "[i]t is their argument as to what their recollections are of the evidence." Addressing the jurors, the judge stated, "[i]t's your recollection at this point as to what the evidence presented was and . . . your recollection collectively [that] will be controlling." In the absence of some evidence to the contrary, "[t]here can be

8

no assumption that the jury did not faithfully follow the [court's] admonition." State v. Nelson, 173 N.J. 417, 447 (2002) (quoting State v. Manley, 54 N.J. 259, 271 (1969)).

Turning to the second offending comment, during her summation, defense counsel told the jury "[t]he judge [was] going to instruct [them] on mental states that appl[ied] in the case[,]" but disputed that the prosecutor had established defendant had the requisite mental states. Relying on the video, defense counsel pointed out that "it show[ed] t[w]o men fighting with little or no room or time to form a specific intent to carry out a plan with such . . . precision to create substantial risk of death."

In response, the prosecutor stated:

> Purposefully and knowingly . . . [are] not just legal terms. They're terms we use every day in our conversations.
>
> We only need common sense to understand them. You saw the video . . . . Purposeful. The defendant purposely stabbed [Flores] in the stomach . . . . The defendant purposely stuck the knife in [Flores'] side.
>
> Knowingly. He knew what he was doing. What else could it be? The knife didn't just stumble into [Flores]. He stuck it there twice.

Later, the prosecutor continued, "[a]gain, purposeful. It's not just a legal term, it's a word we use every day. We only need common sense to understand it."

9

Defense counsel objected, stating on "multiple" occasions, "the prosecutor . . . misstated the law" by "urg[ing] the jury to apply common sense[.]" However, according to defense counsel, "[t]hese are legal terms of art that have a specific meaning . . . ." At defense counsel's request, the judge agreed to give a curative instruction, and instructed the jury as follows:

> If anything said by either attorney . . . about the law is contradictory to what I now tell you[, you] must follow my instructions.
>
>     . . . .
>
> . . . [Y]ou must accept and apply this law for this case as I give it to you in this charge. Any ideas you have or you may have of what the law is[,] what the law should be[,] or any statements by the attorneys as to what the law may be must be disregarded by you if they conflict with this charge.

Subsequently, the judge instructed the jury on the legal definitions of the terms purposely and knowingly.

Defendant renewed his challenge to the prosecutor's "misstatement" of the requisite mental states in his motion for a new trial following the jury verdict, asserting it "led to a manifest denial of justice," notwithstanding the curative instruction. However, the judge rejected defendant's contention, finding defendant failed to establish that a new trial was required. Given the curative instruction, we are satisfied the prosecutor's summation did not deny defendant

10

of his right to a fair trial, and we presume the jury followed the judge's instructions.

Finally, defendant argues count three, possession of the knife under circumstances not manifestly appropriate for such lawful uses as it may have, N.J.S.A. 2C:39-5(d), should have merged into count two, possession of the knife for an unlawful purpose, N.J.S.A. 2C:39-4(d), and count two should have merged into count one, aggravated assault. The State concedes that merger is warranted. See State v. Jones, 213 N.J. Super. 562, 568 (App. Div. 1986) (mandating merger of the defendant's conviction under N.J.S.A. 2C:39-5(d) into the conviction under N.J.S.A. 2C:39-4(d) because "all the elements of [N.J.S.A.] 2C:39-5[(d)] are part of the proof necessary to establish a violation of [N.J.S.A.] 2C:39-4[(d),]" and "[t]he offense set forth in [N.J.S.A.] 2C:39-5[(d)] is a lesser included offense of the crime set forth in [N.J.S.A.] 2C:39-4[(d)]."); see also State v. Tate, 216 N.J. 300, 312 (2013) (explaining that "'[w]hen the only unlawful purpose in possessing the [weapon] is to use it to commit the substantive offense, merger is required'") (alterations in original) (quoting State v. Diaz, 144 N.J. 628, 636 (1996)).

Because the sentences imposed on counts two and three are concurrent, the merger may have no practical effect on the overall length of defendant's

sentence. We affirm the convictions and sentence, but remand for an amendment of the judgment of conviction to reflect the merger.

Affirmed in part; remanded to amend the judgment of conviction consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3020-17T2