**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0153-22

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

JAMES CRAWFORD,

      Defendant-Appellant.

_____

        Submitted September 16, 2024 – Decided November 1, 2024

        Before Judges Gummer, Berdote Byrne, and Jacobs.

        On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 19-02-0187.

        Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Marcia Blum, Assistant Deputy Public Defender, of counsel and on the brief).

        Esther Suarez, Hudson County Prosecutor, attorney for respondent (Stephanie Davis Elson, Assistant Prosecutor, and Amily Bolano Diaz, on the brief).

PER CURIAM

      Defendant James Crawford appeals from an August 12, 2022 judgment of

conviction based on guilty verdicts for charges of murder and weapon offenses. Defendant stood trial with co-defendant Alexander Harris, who is not involved in this appeal.

Defendant argues the trial court erred in admitting certain hearsay statements from a second co-defendant turned cooperating witness for the State, Jahmir Thomas. In seeking reversal and a new trial, defendant claims the trial court committed plain error when it failed to provide the jury with a tailored limiting instruction regarding hearsay statements. He further argues that even if his convictions are not reversed, this matter must be remanded to correct the trial court's sentencing errors. The State opposes reversal of defendant's convictions but agrees resentencing is warranted. For reasons that follow, we affirm defendant's convictions but remand to the trial court to correct defendant's sentence.

I.

We draw the facts leading to defendant's convictions from the trial record. Thomas testified that in the early evening of September 4, 2018, defendant and co-defendant Harris were traveling in Harris's white minivan in Jersey City. Thomas had "[h]ung out with [Harris] a couple times" before. On that date, Thomas was "[i]n Currie[s] Woods projects" when he saw Harris and defendant pull up in the minivan.

According to Thomas, as he entered the minivan, Harris was seated in the driver seat and defendant was seated in the passenger seat. The trio drove north in Jersey City until arriving at the intersection of Ocean and Lembeck Avenues, where the victim, Eric Crocker, was on the stairs of a building located on the northeast corner of Lembeck Avenue. Harris said, "There you go right there," pointing out the victim to others in the minivan. As the minivan traveled through the intersection, Harris drove down an adjacent street and pulled over. Sensing defendant did not want to shoot the victim, Harris said, "If you don't want to do it, I'll do it." But defendant responded, "I'll do it." Thomas explained he knew what Harris and defendant were discussing because they had a gun "[i]n the middle of the [minivan's] floor." At that point, Harris gave defendant the gun from the floor of the minivan, a black hat, a black shirt, and gloves. Defendant exited the minivan and walked toward the intersection of Lembeck and Ocean. Harris and Thomas then drove to a nearby store.

There was testimony from several detectives regarding footage from street-camera recordings of the intersections before, during, and after the shooting. The footage showed an individual dressed in black exiting the minivan at 5:51 p.m. and walking down Lembeck Avenue, approximately half a block from the crime scene. According to Thomas, the individual seen exiting the vehicle was defendant, dressed in all black, wearing the hat, gloves, and shirt

3

Harris had given him. Thomas testified that after Harris returned to the minivan, Thomas moved to the driver's seat and the pair drove away. At that point, Thomas did not know whether the victim had been shot, but "[w]hen [they] got closer [to the scene, they] saw all the chaos on Lembeck [Avenue]."

In the investigation that followed, police seized discarded items found stashed under a nearby vehicle, including the black hat, a pair of gloves, and a black shirt. No blood was found on any of the items; however, a New Jersey State Police DNA analyst testified the lab found one person's DNA profile on the shirt collar and one of the gloves. The analyst found more than one DNA profile on the hat and compared it to a sample of defendant's DNA. The analyst described the profile as "so rare that we can say . . . [defendant] is the source of that profile." A medical examiner also testified for the State and confirmed the victim was shot six times, perishing from fatal gunshot wounds.

In February 2019, defendant, Harris, and Thomas were indicted for conspiracy to commit murder, N.J.S.A. 2C:5-2(a)(1), and murder, N.J.S.A. 2C:11-3(a)(1) and (2) (counts one and two); possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1) (count three); and unlawful possession of a handgun (failure to have a permit), N.J.S.A. 2C:39-5(b)(1) (count four).

A-0153-22

In March 2022, defendant and Harris were tried together, represented by separate counsel. Thomas agreed to testify for the State. Prior to Thomas's testimony before the jury, the trial court conducted a Rule 104(c) hearing to determine the admissibility of the statements made amongst defendant, Harris, and Thomas. During the hearing, defendant's trial counsel cross-examined Thomas about the statements but did not argue for their exclusion.

Following the hearing, the trial court found the statements to have been made voluntarily and reliably in furtherance of a conspiracy for which there was independent evidence produced by the State. The court found:

> There has been ample evidence brought by the State to date showing[,] . . . in conjunction with the statements made by . . . Thomas . . . in furtherance of a conspiracy.
>
> The . . . statements were made, specifically first, "[H]e right there" . . . [and also] "The one with the dreads," was stated[,] [referring to the victim]. This was while they were in the minivan[,] according to the witness who testified under oath today.
>
> The witness then testified . . . the minivan was pulled over. Another statement made was, "Do you still want to do it?" That was from . . . Harris to [defendant], according to . . . Thomas. And another statement, "If you don't want to do it, I'll do it." And then [defendant] eventually stated, "I'll do it," according to the witness, . . . Thomas.
>
> . . . .

A-0153-22

[Defense counsel] will have the opportunity to cross-examine the witness with regard to the statements.  So, for all these reasons [and] under the reasons for bringing a 104(c) hearing under [N.J.R.E.] 803(b), [and] under State v. Phelps[, 96 N.J. 500 (1984),] and its progeny, . . . the statements will be allowed [and] admitted.

After all counsel rested, the court held a jury charge conference.  Counsel agreed to omit that portion of the model jury charge pertaining to "statements of defendant" where the court would normally "remind . . . or tell the jury . . . what the statements were."  Instead, it was agreed the court would leave the jury to determine, as part of its fact-finding function, what statements, if any, defendant actually had made.

The jury returned guilty verdicts on the charges of murder (count two), possession of a weapon for an unlawful purpose (count three), and unlawful possession of a weapon (count four).  The jury hung on the conspiracy to commit murder charge (count one), and the State dismissed that charge as to defendant.  Concerning co-defendant Harris, the jury hung on the conspiracy and murder charges and acquitted him on both gun charges.

In August 2022, the trial court sentenced defendant to a thirty-year term of imprisonment with thirty years of parole ineligibility for murder (count two), subject to the No Early Release Act, N.J.S.A. 2C:43-7.2.  Although the court merged counts three and four with count two, it imposed a sentence of seven

years for possession of a weapon for an unlawful purpose and a sentence of five years for the unlawful possession of a weapon, both to run concurrently with count two.

## II.

On appeal, defendant raises the following arguments:

I    THE JURY SHOULD HAVE BEEN INSTRUCTED THAT IT COULD NOT CONSIDER THE CO[-]CONSPIRATOR'S TESTIMONY CONCERNING STATEMENTS PURPORTEDLY MADE IN THE COURSE OF THE ALLEGED CONSPIRACY TO COMMIT MURDER UNLESS IT FOUND INDEPENDENT EVIDENCE OF THE ALLEGED CONSPIRACY.

II   THE CONVICTION FOR POSSESSION OF A WEAPON FOR AN UNLAWFUL PURPOSE UNDER COUNT [THREE] WAS PROPERLY MERGED WITH THE CONVICTION FOR MURDER; ACCORDINGLY, THE SENTENCE IMPOSED ON COUNT [THREE] MUST BE VACATED.

III  THE CONVICTION FOR POSSESSION OF A WEAPON WITHOUT A PERMIT UNDER COUNT [FOUR] WAS ERRONEOUSLY MERGED WITH THE CONVICTION FOR MURDER AND SHOULD BE VACATED, LEAVING DEFENDANT TO SERVE THE LAWFUL SENTENCE IMPOSED ON COUNT [FOUR].

We review the trial court's evidentiary rulings with deference. State v. Hyman, 451 N.J. Super. 429, 441 (App. Div. 2017). Specifically, a trial court's decision to exclude or admit evidence under the hearsay rules is reviewed for an

abuse of discretion.  Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383-84 (2010).  An abuse of discretion is found only when the court has made "a clear error of judgment."  State v. Koedatich, 112 N.J. 225, 313 (1988). The court's evidentiary decision should be sustained unless it resulted in a "manifest denial of justice."  State v. Perry, 225 N.J. 222, 233 (2016) (quoting State v. Marrero, 148 N.J. 469, 484 (1997)).

Further, it is well established that "[w]hen a defendant does not object to an alleged error at trial, such error is reviewed under the plain error standard." State v. Singh, 245 N.J. 1, 13 (2021).  The plain error standard requires a determination of:  "(1) whether there was error; and (2) whether that error was 'clearly capable of producing an unjust result,' R. 2:10-2; that is, whether there is 'a reasonable doubt . . . as to whether the error led the jury to a result it otherwise might not have reached[.]'"  State v. Dunbrack, 245 N.J. 531, 544 (2021) (quoting State v. Funderburg, 225 N.J. 66, 79 (2016)).  "To determine whether an alleged error rises to the level of plain error, it 'must be evaluated in light of the overall strength of the State's case.'"  State v. Clark, 251 N.J. 266, 287 (2022) (quoting State v. Sanchez-Medina, 231 N.J. 452, 468 (2018)).

Finally, "[a]ppellate courts review sentencing determinations in accordance with a deferential standard."  State v. Fuentes, 217 N.J. 57, 70 (2014).  We review the legality of a sentence de novo, "affording no special

deference to the court['s] interpretation of the relevant statutes." State v. Nance, 228 N.J. 378, 393 (2017). We may correct an illegal sentence "at any time before it is completed." State v. Murray, 162 N.J. 240, 247 (2000); see also R. 3:21-10(b). If a defendant's sentence is illegal, it must be remanded for resentencing. See State v. Romero, 191 N.J. 59, 80-81 (2007).

Statements in Furtherance of a Conspiracy

Defendant argues that in its final charge, the court should have instructed the jury that unless it found independent evidence of a conspiracy, it should not consider the co-conspirator's testimony concerning statements purportedly made in furtherance of that alleged conspiracy. By extension, he argues that because the jury did not convict him of conspiracy, admission of Thomas's testimony violated his right to a fair trial.

In assessing these arguments, we consider our pertinent legal principles. "Where two or more persons are alleged to have conspired to commit a crime, any statement made by one during the course of and in furtherance of the conspiracy is admissible in evidence against any other member of the conspiracy." State v. Harris, 298 N.J. Super. 478, 487 (App. Div. 1997). "Participation in a conspiracy confers upon co-conspirators the authority to act in one another's behalf to achieve the goals of the unlawful scheme. Since conspirators are substantively liable for the acts of their co-conspirators, they

9

are equally responsible for statements by their confederates to further the unlawful plan." Ibid.

"Hearsay" is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." State v. Buda, 195 N.J. 278, 293 (2008); N.J.R.E. 801(c). Hearsay is inadmissible unless it falls within one or more of the exceptions enumerated in the evidence rules. State v. Branch, 182 N.J. 338, 348 (2005). A statement is not excluded by the hearsay rule if it was "made at the time the [party] and the declarant were participating in a plan to commit a crime . . . and . . . made [it] in furtherance of that plan." N.J.R.E. 803(b)(5).

To admit a statement of a co-conspirator in evidence, the State must prove that "[f]irst, the statement [was] made in furtherance of the conspiracy. Second, the statement [was] made during the course of the conspiracy. Lastly, [there] is evidence, independent of the hearsay, of the existence of the conspiracy and defendant's relationship to it." State v. Taccetta, 301 N.J. Super. 227, 251 (App. Div. 1997); see also Harris, 298 N.J. Super. at 488. "A statement is considered to have been made 'in furtherance of the conspiracy' if the statement 'serves a current purpose such as to promote cohesiveness, provide reassurance to a co-conspirator or prompt one . . . to respond in a way that furthers the goal of the

10

conspiracy.'"  State v. Canfield, 470 N.J. Super. 234, 333 (App. Div. 2022) (quoting State v. James, 346 N.J. Super. 441, 457-58 (App. Div. 2002)).

Before admitting a co-conspirator's statement, a "trial court must make a preliminary determination of whether there is independent proof of the conspiracy."  State v. Savage, 172 N.J. 374, 403 (2002); see also N.J.R.E. 104(a)(1) ("The [trial] court shall decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible.  In so deciding, the court is not bound by evidence rules, except those on privilege and [N.J.R.E.] 403.").  The independent evidence can take various forms and "must be substantial enough to engender a strong belief in the existence of the conspiracy and of the defendant's participation."  Phelps, 96 N.J. at 511.  "[T]he appropriate test [is] whether the prosecution has demonstrated by a fair preponderance of evidence that the conspiracy existed and that the defendant participated in it."  Id. at 518.

The Phelps Court emphasized "the trial court alone determines whether the conditions precedent to admission of co[-]conspirator hearsay have been satisfied.  These conditions . . . focus on the reliability of the hearsay and not its relevance."  Id. at 513-14.  "Having the trial court rather than the jury evaluate reliability before admitting or rejecting evidence recognizes the judge's skill and experience."  Id. at 515.  "It is too much to expect jurors to be able to disregard

A-0153-22

evidence they have already properly heard upon their determination at some later time that conditions precedent to admissibility have not been fulfilled." Id. at 516; see also id. at 515 n.3 (rejecting the argument that having the court decide admissibility of a co-conspirator's statement interferes with the jury's fact-finding function and explaining that "[t]he trial court's decision concerning whether evidence is admissible does not decide the guilt or innocence of the defendant," which remains "the jury's task.")

Importantly, the Phelps Court also rejected the contention that a co-conspirator's hearsay statements may be considered by the jury only in determining the conspiracy charge. Id. at 516. The Court explained, "the evidence may be relevant on substantive issues other than conspiracy" and "[o]nce the statement is admitted, it may properly be considered by the jury on all matters with respect to which the statement is relevant." Ibid.

Here, the trial court followed the precepts of case law and the Rules of Evidence. First, it held a Rule 104(c) hearing, making preliminary determinations about the admissibility of hearsay evidence in accordance with N.J.R.E. 803(b)(5). The court reasonably found the statements had strong indicia of reliability and that there was "ample evidence brought by the State" showing "that the statement[s] w[ere] made . . . during the course of a conspiracy" and in furtherance of a conspiracy. It also found there to be reliable

independent evidence of the conspiracy in the form of video, law enforcement testimony, and physical evidence. In admitting statements by defendant and Harris, the trial court properly applied the Supreme Court's holdings in Phelps and Cagno. State v. Cagno, 211 N.J. 488 (2012). We see no error of judgment or abuse of discretion.

The jury's inability to reach a verdict as to the conspiracy does not nullify the trial court's decision to admit statements in furtherance of a conspiracy. As the Court in Phelps observed, a co-conspirator's hearsay statements "may be relevant on substantive issues other than conspiracy," such as the murder charge in this case. See Phelps, 96 N.J. at 516 (citing State v. Louf, 64 N.J. 172, 176 (1973); State v. Yormark, 117 N.J. Super. 315, 336 (App. Div. 1971)).

Defendant next argues that the trial court committed reversible error by failing to administer a tailored instruction that would have allowed the jury to effectively reject the judge's findings (made out of the jury's presence) as to independent evidence of a conspiracy. In other words, defendant argues it was ultimately for the jury -- not the trial court -- to determine if there was independent evidence of a conspiracy. In support of this position, defendant relies on a dissenting opinion by Justice Handler in Phelps. The dissenting Justice was concerned that "[i]f the judge alone resolves the preliminary questions of the admissibility of the alleged co-conspirator's testimony, there is

the possibility that the defendant has been deprived of trial by jury on a critical question of fact." Id. at 528 (Handler, J., dissenting) (internal quotations omitted). In the dissenting Justice's view, "remov[ing] from the jury the issue of independent proof of the conspiracy relegates to the judge instead the task of resolving the central issue of guilt – a result inconsistent with the long-protected jury role." Id. at 534 (Handler, J. dissenting); see State v. Simon, 79 N.J. 191, 199 (1979) ("In the trial of a criminal cause, the ultimate responsibility for determining guilt or innocence reposes solely in the jury and cannot be preempted or dislodged by the court."). To ensure that the jury made the essential finding of fact, the dissent concluded "that the jury, in its final determination of the ultimate guilt or innocence of the defendant, should have been instructed to disregard the hearsay conversations if it found that … independent proof of a conspiracy was lacking." Phelps, 96 N.J. at 524 (Handler, J., dissenting).

The standard of review for a missing jury instruction, when, as here, a defendant did not object at trial, is whether there was plain error "clearly capable of producing an unjust result." R. 2:10-2. In review of the record, we perceive nothing in the facts and circumstances that goes beyond the standard model jury charge that would require special instructions. See generally, State v. Angoy, 329 N.J. Super. 79, 85 (App. Div. 2000) (when finding "the facts of the case and

the claims of the State and the defense [are] quite clear[,]" the failure to tailor the charge is not prejudicial error).  Moreover, we note that the authority defendant offers for such instruction rests on dissenting views, not the majority holding in Phelps.  We are satisfied that the charge as given provided the jury with "sufficient guidance" and did not create any "risk that the [ ] ultimate determination of guilt or innocence [was] based on speculation, misunderstanding, or confusion."  State v. Olivio, 123 N.J. 550, 567 - 68 (1991).

Sentence Imposed

Defendant argues the trial court erred in sentencing defendant on counts three and four, the weapons offenses.  He asks this court to vacate the sentence for the possession of a weapon for an unlawful purpose as that conviction was properly merged with the murder conviction.  He also asks us to reverse the merger of the unlawful possession of a weapon charge with the murder charge. The State agrees.

In State v. Diaz, our Supreme Court held "[w]hen the only unlawful purpose in possessing the [weapon] is to use it to commit the substantive offense, merger is required."  144 N.J. 628, 636 (1996). "When the jury is explicitly instructed that the unlawful purpose was to use the gun against the victim of the substantive offense . . . merger is required notwithstanding that the evidence was sufficient to support a separate unlawful purpose."  Id. at 641.  This principle

was reaffirmed in Tate, where the court merged the convictions because the defendant "had no broader unlawful purpose for possessing the weapon." State v. Tate, 216 N.J. 300, 313 (2013).

"[T]he failure to merge convictions results in an illegal sentence for which there is no procedural time limit for correction" because merger implicates a defendant's substantive state constitutional right against double jeopardy. Romero, 191 N.J. at 80. Thus, "a reviewing court is not free to ignore an illegal sentence," State v. Moore, 377 N.J. Super. 445, 450 (App. Div. 2005), and should correct it, State v. Tavares, 286 N.J. Super. 610, 617 (App. Div. 1996).

Here, the court properly merged the possession of a weapon for an unlawful purpose charge with the murder charge. Therefore, the court should not have imposed a separate sentence on that weapon charge. Further, the court erred in merging the unlawful possession of a handgun without a permit charge with the murder charge because that weapon charge required proof of a separate element. Thus, the sentence imposed for that weapon charge remains.

In sum, we affirm the murder conviction and the sentence the court imposed for that conviction. We affirm the convictions on the weapons charges. Because the trial court erred in imposing a sentence based on the possession of a weapon for an unlawful purpose conviction, after it properly merged that conviction with the murder conviction, we vacate the sentence imposed on the

16

possession of a weapon for an unlawful purpose conviction. Although the court erred in merging the unlawful possession of a handgun without a permit conviction with the murder conviction, the sentence of five years with a mandatory parole disqualifier of three and one-half years running concurrent with the sentence for murder imposed by the court is lawful, and we affirm that sentence. We remand and direct the trial court to amend the judgment of conviction accordingly.

Affirmed in part, vacated in part, and remanded for correction of the judgment of conviction. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17